**Sharon Lynne GEORGE et al.**

**v.**

**C. Walter DAVIS, President, School Board of East Feliciana Parish, a corporation, and M. Ney Williams, Superintendent of Schools of East Feliciana.**

**Civ. A. No. 3253.**

United States District Court,
M. D. Louisiana.

Oct. 23, 1973.

Stanley A. Halpin, New Orleans, La., for plaintiffs.

John F. Ward, Jr., Baton Rouge, La., for defendants.

E. GORDON WEST, District Judge:

This school desegregation case is once again before the Court on a "Motion for Supplemental Relief." An evidentiary hearing was held on this motion on August 28, 1973, the day that school for the 1973–1974 school year opened in East Feliciana Parish. Neither the pleadings nor the evidence indicate in any way that there are any real plaintiffs in this motion other than the attorney who filed the motion. No specific plaintiffs have been named and none testified. The unrefuted evidence adduced at the hearing conclusively showed that there are no complaining plaintiffs and that the only real complainant is the attorney who filed the motion and who now demands of the defendants a substantial attorney fee for his efforts.

The evidence presented to the Court consisted of nothing other than the testimony of the defendants who were forced to testify under cross-examination as adverse parties. No plaintiffs were identified and none testified. No witnesses were presented on behalf of the mover. The evidence adduced by cross-examination of the defendants falls woefully short of supporting the claims of the movant attorney. His cross-examinations amounted to nothing but a fishing expedition which points up dramatically the evil in permitting these cases to be reopened at the whim of a party or an attorney by the simple expedient of filing a motion. This school and others have been integrated according to law and the cases involving such schools, some of which have been technically considered "active cases" for as long as twenty years, should be closed. When a school system has been judicially declared integrated, future violations of the law, if they occur, should require the filing of a new law suit with all of the protections attendant thereto. Specific plaintiffs should be named and defendants should be served and given the opportunity to file preliminary motions as well as their answer to a specific complaint. The "motion practice" permitted in these civil rights cases should be terminated once the object of the original suit has been accomplished. Simple due process of law requires that this be done.

The main thrust of the present motion is that the defendant School Board has not maintained a ratio of white and negro faculty and staff members commensurate with the ratio of whites and negroes in the school community. It is alleged that there has, since 1968, been a diminution of negro faculty and staff members in the system, and that the defendants' hiring practices have discriminated against negroes. In connection with this latter contention, mover alleges that the School Board has actively recruited only white teachers. It is also contended that the majority to majority transfer provision contained in the de-

segregation plan promotes segregation, and that there are instances of "zone jumping" which are violative of the plan. Lastly, it is alleged that there are some violations of the plan in connection with the operation of the school busses. At the outset of the hearing it was agreed that a simple conference had rendered moot the charges of zone jumping and improper bussing practices. It is obvious therefore that no litigation was required in that connection. It is inevitable that in an entire school system there will, from time to time, be instances of students attempting to attend a school other than the one to which they should be assigned. It is also inevitable that attempts will be made, from time to time, by children to ride busses other than the ones to which they are regularly assigned. But these problems in this case were so minor that a mere conference, calling specific instances to the attention of the school authorities, resulted in immediate agreement as to steps to be taken voluntarily by the School Board. No litigation was needed in this area. By agreement, those issues are moot.

As to the major complaint, i. e., improper ratio of white and negro faculty and staff members, there was simply no evidence introduced to justify this complaint. Apparently there is no contention on the part of the mover that, as of 1969, when the School Board was ordered to comply with the criteria set forth in Singleton et al. v. Jackson Municipal Separate School District et al., 419 F.2d 1211 (C.A.5—1970), the ratio of white to negro faculty and staff members was improper. At that time, for the 1968–1969 school year, the faculty and staff was made up of 60 per cent negro and 40 per cent white in compliance with court-approved plans. Mover apparently has no quarrel with that ratio, nor did the United States District Court or the Fifth Circuit Court of Appeals. In the following school years, due to resignations of some white teachers, the School Board did intentionally employ several white teachers to maintain that ratio. Now, in 1973, mover complains about the fact that four years ago, in 1969, the School Board intentionally hired some white teachers in order to maintain what they believed to be a mandatory ratio. At that time it was the opinion of this Court that Singleton required the maintaining of a fixed ratio and that in order to do so the School Board must replace white teachers with white teachers and negro teachers with negro teachers. On the first hearing on an appeal from that interpretation of Singleton in Carter v. West Feliciana Parish School Board, 432 F.2d 875 (C.A.5—1970), the Fifth Circuit Court of Appeals agreed with this Court, but on reconsideration, concluded that this was a misinterpretation of Singleton. See also Lee v. Macon, 482 F.2d 1253 (C.A.5 —1973).

█ █ As finally noted in Carter and again in Lee, after an acceptable faculty ratio has been deliberately arrived at, the future hiring, firing, promoting or demoting of teachers or staff members must be on a purely non-discriminatory basis, with race playing no part whatsoever in the process. If no discrimination is practiced, and if proper objective criteria are used to determine who shall be hired, fired, promoted, or demoted, then it is immaterial what happens to the ratio. However, if the ratio changes significantly, the burden is on the School Board to show that race did not play any part in the process. Mover complains now that the ratio of white to negro faculty members has dropped since 1969 from 60 percent negro to 57 per cent negro—a decrease of only 3 per cent in the course of four years. This, according to the moving attorney, represents "racial discrimination with respect to hiring and promotion of faculty and staff."

During the four years between the implementation of the 1969 desegregation plan and the time of this motion, there were no demotions or dismissals of faculty members. The only vacancies occurring were those caused by resignations. According to the uncontradicted

testimony in this case, all vacancies have been filled by the application of objective criteria to all applicants which in no way involved racial considerations. All of the criteria employed, according to the uncontradicted testimony of every witness, was geared to obtaining the best qualified teachers, without regard to any racial consideration, for the East Feliciana Parish school system. The primary responsibility for screening applications for faculty positions now rests with Mr. James D. Soileau, the Superintendent of Schools. He testified that all applicants are personally interviewed and that consideration is given to the applicant's college transcript, to his knowledge of the subject which he seeks to teach, and to his philosophy on education and on life in general. The applicant's appearance, references and teaching experience are all matters taken into consideration. When all other things are essentially equal, preference is generally given to those who reside within the school district. Mover apparently had no quarrel with the validity of these criteria, nor did he present a single shred of evidence to indicate that these criteria were not objectively used. The entire screening process is directed toward obtaining the best qualified teachers without regard to the race of the applicant. There is no evidence of any kind presented to this Court which would in any way contradict that testimony. The criteria used by the defendants in the hiring process is both objective and reasonable, and has resulted, incidentally, in a fairly constant ratio of white and negro teachers in the system.

When the final desegregation plan was imposed upon this school system and implemented in 1969, 60 per cent of the faculty was negro. This was an acceptable ratio, and with the implementation of that plan the East Feliciana Parish school system finally became a unitary, desegregated system, and this Court should have been permitted to close that case. Since that time, after the application of the objective criteria hereinbefore referred to, and as of now, the faculty in this system remains 57 per cent negro, or a decrease of only 3 per cent over a period of four years. There is nothing in the record which gives the slightest indication that this 3 per cent decrease has been caused by discriminatory hiring practices. On the contrary, every bit of evidence produced clearly establishes the fact that the objectives of *Singleton* and its progeny have been accomplished by the methods used by the respondents in hiring and managing its teaching personnel. There have been no complaints of racial discrimination lodged with the School Board or with the Court by anyone claiming to have been discriminated against. Almost a full year ago an attorney lodged an identical complaint with the then Superintendent of Schools. An appointment was immediately arranged for the attorney to meet with the Superintendent of Schools at his office. At the time of that meeting, which lasted most of a day, all of the School Board's records, documents and applications pertaining to employment and/or discharge or resignation of teachers and staff members were made available to the complaining attorney. A full disclosure of all matters pertaining to hiring of faculty personnel was made and all questions propounded by the complaining attorney were freely answered. No further complaint was heard. Now, a year later, with no further significant changes of any kind having occurred in the makeup of the faculty and staff of the defendant school system, and with no new evidence of any kind, and with only a matter of days remaining before the commencement of a new school term, this motion is filed. It is harassment, pure and simple.

But that is not all. Prior to filing this motion, the same attorney who filed this motion, apparently representing no real plaintiffs, filed a motion to force a reapportionment of the School Board districts. That motion was set for trial on a day less than a week prior to the filing of this motion. While this Court was and is of the opinion that there was

no merit to the motion for reapportionment, nevertheless, on the day set for hearing, the respondent School Board, in an obvious appeasement attempt, agreed to permit the change in one district as demanded by the attorney, even though under the existing plan, the representation on the Board was 50 per cent negro and 50 per cent white. But the attorney for the plaintiffs demanded, as a condition of settlement, that he be paid a $2,500 attorney fee. Finally, in a spirit of compromise, the Board agreed to pay a $1,750 fee. As far as the Board knew, the reapportionment demand was the only complaint with which they were confronted. But before the parties had even left the courthouse after settlement agreement had been reached, the same attorney advised counsel for respondents that he "had in his typewriter another suit" complaining about faculty ratios. He suggested that he was willing to talk compromise on that one also whenever respondents were ready, but that another attorney fee would be involved. The infuriated respondents then wanted to call off their prior agreement but were advised by their attorney not to. Now, after no compromise was forthcoming in this case, the attorney plaintiff asks this Court to award him a fee based on an alleged 65 hours of work. The request for a fee is preposterous, and in the opinion of this Court, is made in bad faith.

The hearing was almost a farce with no evidence whatsoever being presented to support any of the attorney's claims. The case had no merit and the attorney knew it. He also knew that the respondent School Board would never have agreed to pay him the $1,750 fee had they not been led to believe that that compromise settled all existing disputes between them. Even if this Court had concluded that the attorney was entitled to injunctive relief in connection with his allegations about faculty ratios, it would still refuse to allow an attorney fee on the ground that the attorney has already been well paid for his work. And lastly, judging from the hearing held on August 28, 1973, and from the lack of evidence adduced, this Court would have to be terribly naive to believe that 65 hours had been devoted to the preparation of that case.

For these reasons, judgment will be entered herein in favor of the respondents, and against the plaintiffs, rejecting the demands of the plaintiff for supplemental relief, and rejecting the demand for attorney fees and costs.