552 F.2d 1084
 22 Fair Empl.Prac.Cas. 1222
 Anthony T. LEE et al., Plaintiffs,
United States of America, Plaintiff-Intervenor,
National Education Association, Plaintiff-Intervenor-Appellant,
v.
SELMA CITY SCHOOL SYSTEM, Defendant-Appellee.
 No. 76-3279.
 United States Court of Appeals,
Fifth Circuit.
 May 17, 1977.
 
 Solomon S. Seay, Jr., Montgomery, Ala., J. L. Chestnut, Jr., Selma, Ala., for plaintiff-intervenor-appellant.
 Sam Earle Hobbs, Edgar A. Stewart, Selma, Ala., for defendant-appellee.
 Teresa Milton, U. S. Dept. of Justice, Civil Rights Div., Education Section, Washington, D. C., for United States.
 Appeal from the United States District Court for the Southern District of Alabama.
 Before AINSWORTH, GODBOLD and HILL, Circuit Judges.
 PER CURIAM:
 
 
 1
 This case is a part of litigation which began in the late 1960's relating to desegregation of the Selma (Alabama) City School System.
 
 
 2
 In October 1969 a three-judge district court entered an order directing the Selma City Board of Education to file a plan for disestablishing its dual school system based upon race. In June 1970, after hearings, the court entered an order for the unification of the Selma system. It contained provisions familiar to all boards, attorneys, and courts involved in school desegregation in the states of the Fifth Circuit, as the "Singleton Standards." Singleton v. Jackson Municipal Separate School Dist., 419 F.2d 1211 (C.A.5, 1969) (en banc), rev'd in part sub nom. Carter v. West Feliciana Parish School Bd., 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970) (reversal limited to timing of desegregation.) Included were the usual requirements relating to reductions in staff, requiring the Board to develop, announce, make available for public inspection and, implement objective and reasonable nondiscriminatory standards relating to dismissal or demotion of staff members occurring as a result of reductions in staff.
 
 
 3
 When the June 1970 order was entered Selma had two high schools, Hudson, which was all black, and Parrish, all white. W. J. Yelder, a black man, had been principal of Hudson for 15 to 16 years, and James Street, a white man, had been principal of Parrish for five or six years. The two schools were consolidated into Selma High School, and Street was named as principal. Yelder was assigned to be principal of a largely black junior high school at a lower salary than he had been receiving.[1] Yelder remained in this position until the beginning of the 1976-77 school year.
 
 
 4
 In September 1970 the plaintiff-intervenor National Education Association filed a motion charging that contrary to the order of the court, the School Board had dismissed or demoted black staff members solely on the basis of their race and color and not on the basis of objective and reasonable nondiscriminatory standards. So far as the record discloses, for an extended period of time neither the court nor any of the parties pressed for a ruling on this motion or for a trial on the merits of the case, which involved other issues as well as those relating to alleged discriminatory dismissals and demotions.
 
 
 5
 In March 1972 the Board adopted criteria for reductions in staff. Plaintiffs filed written interrogatories inquiring about the existence of such criteria in November 1973. The Board answered in January 1974, attaching the criteria which it had adopted. The district court entered an order in June 1975 that the criteria were in part subjective, and again directed the Board to adopt a set of objective nonracial criteria.
 
 
 6
 Meanwhile, in the spring of 1975 Street resigned as principal of Selma High School. On June 3 plaintiffs filed a motion for a temporary restraining order forbidding the Board from filling the vacancy without offering it to Yelder. The Board responded that the position had already been filled on May 29 (by a white). The record does not disclose action on the motion by the district court.
 
 
 7
 In April 1976 the district court brought to trial the claim, pending since 1970, that the Board had made dismissals or demotions based on race and not on the basis of reasonable, objective non-discriminatory standards. The court found that the School Board had not considered nonracial objective criteria in finding a replacement for Street in 1975, indeed, it had never adopted such criteria, and that the failure to employ Yelder as principal of Selma High School in 1975 was the result of racial discrimination. It ordered that Yelder be assigned as principal of Selma High effective at the beginning of the 1976-77 school year, and that, for the 1975-76 school year, he be paid the difference between the salary he received and what he would have received as principal of the high school. The Board has not appealed from these findings and states to us that it has complied with the order.[2]
 
 
 8
 The court refused, however, to order any relief for Yelder for periods prior to 1975-76, and the plaintiff-intervenor NEA appeals from this denial of remedy. The court erred in refusing to order relief retroactive to 1970.
 
 
 9
 The Singleton standards require a board to choose definite principles that it will employ in staff reductions, to make the principles publicly known so that all can know what they are, and then to apply the principles if reductions occur. Standards thus adopted and formally set out will guide a board toward making truly nondiscriminatory decisions. Among those who are displaced such standards will engender confidence that the board has acted for nondiscriminatory reasons. Also the standards will tend to make it unnecessary for the parties to retire to the federal courthouse to settle their disputes over reductions in staff.
 
 
 10
 This case is the proof of the Singleton pudding. The Board acted in 1970 without having adopted standards. Six years later a district court has been called on to weigh the relative qualifications of Yelder and Street as of 1970. Beyond that, in defense of its actions the Board has asserted various post-1970 criticisms of Yelder's work which could not have been considered in the 1970 decision, and all (or substantially all) of which have not been documented, or registered as they allegedly occurred, or asserted as grounds for seeking to terminate Yelder's employment. The trial judge noted that the facts were unclear and left much to be desired. He concluded, however, that in 1970 there was an exigent situation and that, as of that time as between the two men Street was the "better choice." Whether "better" means "better by reasonable, objective and nondiscriminatory standards," or by other yardsticks, we do not know. The district court could conclude no more than that "it cannot be said that objective criteria were not employed" (emphasis added). Singleton requirements are affirmative in nature. Objective criteria must exist and must be utilized.
 
 
 11
 As in U. S. v. Gadsden, 5 Cir., 539 F.2d 1369 at 1377 (1976), "We do not find it necessary to decide in this case whether the absence of prior written nonracial objective criteria must, in every case, preclude further inquiry as to whether a dismissal or demotion in fact was made pursuant to nonracial objective criteria."[3] What we do decide is that in this case the failure of the Board to adopt, publish and apply objective nonracial criteria as required by Singleton and by the June 1970 order of the trial court, precluded the Board from attempting to rely, as justification for its 1970 actions, upon alleged objective criteria not adopted and made public.
 
 
 12
 Yelder is entitled to the status of high school principal from the beginning of the 1970-71 school year and to back pay accordingly.
 
 
 13
 REVERSED in part and REMANDED for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 The Board offered Yelder a position as "Coordinator of Administrative Services," which he refused. The district court found that there had been no such position in the past, that it was a "dead end" place created solely to accommodate Yelder's situation, and that no such "position" has existed since Yelder turned it down
 
 
 [2]
 The Court also found that with respect to Andrew Sewell, formerly basketball coach at Hudson High, the Board had failed to comply with the requirements of the January 1970 order and of Singleton, with respect to the vacancy as head basketball coach at Selma High in July 1970, and again in 1973 when this position again became available. Sewell, however, waived his right to become head basketball coach and elected to remain as assistant basketball coach
 
 
 [3]
 For a review of the cases, see footnote 15 of Gadsden, 539 F.2d at 1377
 Of course, notwithstanding Singleton, if a teacher or staff member engages in conduct "repulsive to the minimum standards of decency" he may be discharged without regard to preestablished objective criteria and even though the school board has failed to establish objective criteria. Thompson v. Madison County Board of Education, 476 F.2d 676 at 678-79 (C.A.5, 1973). Such "just cause" does not, however, refer to lack of professional credentials, poor performance in the classroom, failure to abide by school regulations, lack of cooperation, or other similar situations, all of which fall directly within the scope of Singleton. Id.