Anthony T. LEE et al., Plaintiffs, United States of America, Plaintiff-Intervenor, Amicus Curiae,

National Education Association, Inc., Plaintiff-Intervenor, Appellant,

v.

PICKENS COUNTY SCHOOL SYSTEM, Defendant-Appellee.

No. 76–3906.

United States Court of Appeals,
Fifth Circuit.

Nov. 1, 1977.

Donald V. Watkins, Montgomery, Ala., for plaintiff-intervenor, appellant.

Walter W. Barnett, John C. Hammock, Attys., Dept. of Justice, Washington, D.C., for U.S.A.

Martin Ray, Tuscaloosa, Ala., William W. Carpenter, Superintendent, Pickens County Bd. of Educ., Carrollton, Ala., for defendant-appellee.

Demetrius C. Newton, Birmingham, Ala., Jack Greenberg, NAACP Legal Defense & Educ. Fund, New York City, U. W. Clemon, Birmingham, Ala., Paul F. Hancock, Educ. Sect., Civil Rights Div., U.S. Dept. of Justice, Washington, D.C., Wayman G. Sherrer, U.S. Atty., William J. Baxley, Atty. Gen., Birmingham, Ala., for other interested parties.

Before BROWN, Chief Judge, MORGAN and GEE, Circuit Judges.

PER CURIAM:

In 1970, the Pickens County School System was ordered to convert from a dual system to a unitary system. The attempts to comply with this order have given rise to the issues in this appeal. The appellant, National Education Association, Inc., contends that the order of the district court denying relief to Douglas L. Pope and promulgating criteria to be used in employment decisions were in violation of the standards established by this court in *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211 (5th Cir. 1970), *rev'd in part sub nom. Carter v. West Feliciana Parish School Board*, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970). Because we feel that the findings of fact and conclusions of law contained in the order of the district court are inadequate, the case is remanded for further proceedings.

This court has recognized that the transition from a dual to a unitary system often results in a reduction of personnel. In order to insure that blacks did not feel a disproportionate effect of this reduction, the following standards were established:

2. Staff members who work directly with children, and professional staff who work on the administrative level will be hired, assigned, promoted, paid, demoted, dismissed, and otherwise treated without regard to race, color, or national origin.

3. If there is to be a reduction in the number of principals, teachers, teacher-aides, or other professional staff employed by the school district which will result in a dismissal or demotion of any such staff members, the staff member to be dismissed or demoted must be selected on the basis of objective and reasonable non-discriminatory standards from among all the staff of the school district. In addition if there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race, color, or national origin different from that of the individual dismissed or demoted, until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so.

Prior to such a reduction, the school board will develop or require the development of nonracial objective criteria to be used in selecting the staff member who is to be dismissed or demoted. These criteria shall be available for public inspection and shall be retained by the school district. The school district also shall record and preserve the evaluation of staff members under the criteria. Such evaluation shall be made available upon request to the dismissed or demoted employee.

'Demotion' as used above includes any re-assignment (1) under which the staff member receives less pay or has less responsibility than under the assignment he held previously, (2) which requires a lesser degree of skill than did the assignment he held previously, or (3) under which the staff member is asked to teach a subject or grade other than one for which he is certified or for which he has had substantial experience within a reasonably current period. In general and depending upon the subject matter involved, five years is such a reasonable period.

*Singleton, supra,* 419 F.2d at 1218.

■ The effect of this rule is to give twofold protection to those who are demoted or dismissed because of desegregation related reductions. First, procedural fairness in determining who is to be demoted is guaranteed by the requirement of prior written criteria. *United States v. Gadsden County School District,* 539 F.2d 1369 (5th Cir. 1976); *see also Lee v. Selma City School System,* 552 F.2d 1084 (5th Cir. 1977). Second, those who are displaced are given priority consideration for new positions equal to the one which was lost because of desegregation. *Lee v. Macon County Board of Education,* 456 F.2d 1371 (5th Cir. 1972).

■ "A plaintiff seeking *Singleton* protection has the burden of proving the applicability of its terms." *Ayers v. Western Line Consolidated School District,* 555 F.2d 1309 (5th Cir. 1977). Thus, in order to prevail on remand, plaintiff must show, and the court must find, a reduction[1] in person-

---

1. *Singleton* refers to "a reduction in the number of principals, teachers, teacher-aides, or other professional staff . . ." 419 F.2d at 1218. Accordingly, it is clearly appropriate to look solely to the number of principals involved instead of the total number of personnel involved. However, the facts of this case present a somewhat more difficult problem. During school year 1969–70, prior to the 1970 desegregation order, there were nine principalships in the district, and of these, six included high school level grades. Mr. Pope was principal of

Hopewell High School. The year immediately following the 1970 order, school year 1970–71, there were still nine principal positions; however, only four of these were at the high school level, a decrease of two from the previous year. Mr. Pope was reassigned to the Carrollton Annex, which included grades 5–9. Although there were changes in personnel during school year 1971–72, the total number of principalships and the number of high school principalships remained constant. The following year, 1972–73, Mr. Pope's school was closed and he

nel because of desegregation, *see Ayers, supra,* resulting in the demotion[2] of Mr. Pope. If these elements are established, Mr. Pope would be entitled to the protections discussed above.[3]

■ With respect to the employment criteria established by the trial court, we remand for further findings and reformula-

tion. Where *Singleton* applies, and the trial court concluded it was applicable here, objective criteria are required and, while on occasion we have approved criteria which, although not obviously objective, are reasonably susceptible of objective assessment, *Lee v. Chambers County Board of Education,* 533 F.2d 132 (5th Cir. 1976), in no case controlled by *Singleton* have we approved

---

was assigned as a classroom teacher in one of the high schools. Thus, in that year, there was a decrease in the total number of principalships from nine to eight. On remand, the trial court must determine at what point a *Singleton* reduction occurred, since Mr. Pope would not be entitled to any relief under the *Singleton* requirements prior to that time.

There is some authority supporting the proposition that a *Singleton* reduction may be found by showing a decrease in a subclass notwithstanding a finding that no change had occurred in the overall class. In a case dealing with high school teachers, this court stated:

> We approve the district court's primary focus on the *high school* numbers. This approach may be used where, as here, the refusal to rehire a high school teacher in no way directly or indirectly relates to the loss of teaching positions in the elementary grades. (Emphasis in original.)

*Pickens v. Okolona Municipal Separate School District,* 527 F.2d 358, 362 n. 3 (5th Cir. 1976).

2. This issue involves problems similar to those connected with the reduction issue discussed in note 1, *supra.* The trial court must be concerned with two separate position changes. Prior to the 1970–71 school year, Mr. Pope was moved from his position as high school principal to a new position as junior high school principal. Two years later, prior to the 1972–73 school year, he was reassigned to a teaching position. There is little doubt that the latter move constitutes a demotion; however, it is less clear whether the initial reassignment constituted a *Singleton* demotion. Although each case must turn on its own facts, in at least one case a transfer from high school principal to junior high principal was found to be a demotion within the meaning of *Singleton. McCurdy v. School Board of Palm Beach County, Florida,* 367 F.Supp. 747 (S.D.Fla.1973), aff'd 509 F.2d 540 (5th Cir. 1975). Although *McCurdy* apparently relied on the salary differential, salary alone is not determinative. A demotion may be found notwithstanding a salary increase. *Lee v. Macon County Board of Education,* 453 F.2d 1104 (5th Cir. 1971). "The real gist of demotion is a reduction in responsibility, not in salary." *Id.* at 1109; *see also United States v. Gadsden County School District,* 539 F.2d 1369 (5th Cir. 1976); *Campbell v. Gadsden*

*County District School Board,* 534 F.2d 650 (5th Cir. 1976).

3. It is undisputed that there were no prior written non-racial objective criteria existing at the time of either of Mr. Pope's two transfers.

This court has twice before declined to address the question of "whether the absence of prior written nonracial objective criteria must, in every case, preclude further inquiry as to whether a dismissal or demotion in fact was made pursuant to nonracial objective criteria." *Gadsden County, supra,* 539 F.2d at 1377; *Selma City, supra* 552 F.2d at 1086. Without expressing any view on the merits, we mention the problem because the trial court found that there was "no intentional discrimination by the Pickens County Board of Education," but that "[i]t was clearly demonstrated on the basis of past performance, that Mr. Pope lacked the necessary capacity to adequately fill such an administrative post."

The trial court obviously felt that Mr. Pope's reassignments were justified despite the absence of the requisite *Singleton* criteria. In this regard we reiterate:

> We find no case . . . where we *upheld* a dismissal or demotion as having been made pursuant to non-racial objective criteria, but where such criteria had not first been reduced to writing and made available for public inspection. *But cf. Lee v. Macon County Board of Education,* 470 F.2d 958 (5th Cir. 1972) (emphasis in original).

*Gadsden County, supra,* at 1377–78 n. 15.

In the event the district court chooses to look beyond the absence of prior written nonracial objective criteria, the burden on the School Board would be substantial. If Mr. Pope were entitled to *Singleton* protection for his first reassignment, it would be necessary to clearly establish why an individual who was qualified to be the principal of an all black high school suddenly became unqualified to be the principal of a desegregated high school, but remained sufficiently qualified to be the principal of a desegregated junior high school. *See Lee v. Macon County Board of Education,* 453 F.2d 1104 (5th Cir. 1971).

criteria specifically designated as subjective.[4]

REMANDED.

4. This result is required since the trial court's order does not specify to whom these criteria are applicable. Although some cases seem to read *Singleton* to require the use of objective criteria for all future hiring, including periods after attaining a unitary system, *Lee v. Macon County Board of Education*, 482 F.2d 1253 (5th Cir. 1973); *Carter v. West Feliciana Parish School Board*, 432 F.2d 875 (5th Cir. 1970), we do not think this is a correct reading of *Singleton* nor is it necessarily the best result. *Singleton* set forth two distinct standards to be used with respect to staff members. The court initially required that staff decisions be made "without regard to race, color, or national origin," 419 F.2d at 1218, and then added the objective criteria requirement for desegrega-

tion-related reductions. *Id.* This would seem to allow use of a less restrictive standard for those positions where there are to be no desegregation-related reductions. Furthermore, it is clear that the *Singleton* standards do not apply after unification is complete. *See Thompson v. Madison County Board of Education*, 496 F.2d 682 (5th Cir. 1974). To say that *Singleton* is inapplicable does not mean that there are no standards. In 1972, Title VII was specifically amended to extend its coverage to this type of employment. 42 U.S.C.A. § 2000e *et seq.* (1977). We think that the standards required by Title VII are adequate to cover staff decisions for those classes of personnel in which there were no desegregation-related reductions requiring a stricter standard.