574 F.2d 268
 22 Fair Empl.Prac.Cas. 1522, 16 Empl. Prac.
Dec. P 8340
Sonnie Wellington HEREFORD, IV, et al., Plaintiffs,
Charles Ford et al., Plaintiffs-Appellants,
United States of America, Plaintiff-Intervenor,
v.
HUNTSVILLE BOARD OF EDUCATION et al., Defendants-Appellees.
 No. 76-4437.
 United States Court of Appeals,
Fifth Circuit.
 June 2, 1978.
 
 U. W. Clemon, James K. Baker, Birmingham, Ala., for plaintiffs-appellants.
 In title Charles Ford, pro se.
 Joe L. Payne, Ralph H. Ford, Huntsville, Ala., for defendants-appellees.
 Solomon B. Seay, Jr., Montgomery, Ala., for Ala. State Teachers.
 Orzell Billingsley, Jr., Birmingham, Ala., James C. Gray, Jr., Norman J. Chachkin, Jack Greenberg, New York City, Griffin & Griffin, Harold F. Herring, Huntsville, Ala., for Citizens for Neighborhood Schools.
 Wayman G. Sherrer, U.S. Atty., Birmingham, Ala., Brian K. Landsberg, Atty., Mark L. Gross, Theodore J. Garrish, Andrew F. Oehmann, Jr., Educ. Sect., Civil Rights Div., Dept. of Justice, Washington, D. C., for other interested parties.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before AINSWORTH, GODBOLD, and HILL, Circuit Judges.
 JAMES C. HILL, Circuit Judge.
 
 
 1
 The case on appeal arises in the context of the desegregation of the Huntsville, Alabama school system. Eight plaintiffs, present and former black employees of the school system, allege that the defendants have unlawfully discriminated against them and against other similarly situated persons.[1] Of the eight plaintiffs, six claim that the defendants unconstitutionally denied them and other similarly situated persons promotions because of their race. The other two plaintiffs claim that the defendants demoted them in contravention of this court's decision in Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5th Cir. 1969), cert. denied, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 530 (1970). The district court held that the defendants have not racially discriminated in awarding promotions and that Singleton is inapplicable to the plaintiffs' claims. On this appeal, the plaintiffs do not challenge the district court's holding that Singleton is inapplicable to promotion decisions. The plaintiffs do challenge the district court's other holdings. We hold that the plaintiffs' challenges are meritless, and we affirm the district court.
 
 
 2
 I. Allegedly Unconstitutional Failures to Promote.
 
 
 3
 The plaintiffs charge that the defendants have discriminated against blacks in awarding promotions by keeping black personnel in traditionally black schools and by failing to appoint blacks to certain positions. The plaintiffs pray that the defendants be required to adopt and use objective criteria for promotion decisions. Singleton is inapplicable to these claims, because Singleton applies only to desegregation related reductions resulting in dismissals or demotions. Lee v. Russell County Board of Education, 563 F.2d 1159, 1161 (5th Cir. 1977); Ayers v. Western Line Consolidated School District, 555 F.2d 1309, 1321 (5th Cir. 1977); Pickens v. Okolona Municipal Separate School District, 527 F.2d 358, 361 (5th Cir. 1976). The defendants still had the burden of proving, however, that their personnel decisions were not unconstitutionally motivated. Barnes v. Jones County School District, 544 F.2d 804, 807 (5th Cir. 1977); Roper v. Effingham County Board of Education, 528 F.2d 1024, 1025 (5th Cir. 1976).
 
 
 4
 In filling job vacancies, a school board's decision may be based on certain subjective factors, such as an applicant's knowledge of his subject, philosophy on education and on life in general, appearance, references, leadership ability, and aggressiveness. George v. Davis, 365 F.Supp. 446 (M.D.La.1973), aff'd, 493 F.2d 663 (5th Cir. 1974). Every specific promotion decision about which the plaintiffs complain was justified by differences in the applicants' credentials and abilities. Following is a summary of the plaintiffs' specific claims and of the evidence taken concerning those claims.
 
 
 5
 (1) Mr. Willie Clark was first employed in 1957 as an industrial arts teacher, and he remained in that position for five years. He then was promoted to D. O. Coordinator at Council High School and then at Butler High School. Clark was appointed assistant principal at Johnson High School five years before trial: no evidence exists that he has since changed positions.
 
 
 6
 When a vacancy occurred in the principalship at Butler High School in the early part of 1975, Clark applied for the position but did not receive a response. Special staff difficulties existed at Butler when the vacancy occurred, and Clark was considered along with several other persons. Mr. Seal, who was Director of Secondary Education, was chosen to fill the vacancy because of his strong leadership, initiative, and ability to reunite the faculty. Mr. Marvin Clem, who was the principal at Johnson High School for two of the years that Clark was assistant principal, testified that Clark was reluctant to assume average responsibilities and to involve himself in disciplinary procedures, particularly with black students. Clem testified that he did not recommend Clark for a principalship.
 
 
 7
 In August 1975, Clark applied for a vacancy in the principalship at J. O. Johnson High School and was interviewed by the Superintendent. The vacancy at Johnson was filled by a white, Mr. Tom Drake, who was the principal of Ed White Middle School at that time. The vacancy thus occurring at Ed White Middle School was filled by Mr. Jack Anthony, a black. Clark conceded that several white assistant principals with longer service than his as assistant principal were passed over for the principalship at Johnson, including the assistant principal at Johnson, and for the principalship at Ed White Middle School. Additionally, Drake was a tenured principal, whereas Clark was not.
 
 
 8
 Clark also complains that he did not receive an elementary school principalship at Rolling Hills in 1975. Clark had no experience in the elementary school field and conceded that he did not know whether he would be qualified in that field under the accreditation requirements of the Southern Association of Colleges and Schools.
 
 
 9
 (2) Mr. Charles Ford is an assistant principal at Huntsville Middle School. Prior to his present assignment in 1973, he taught physical education, coached basketball and baseball, and was an assistant football coach at Huntsville Junior High. In 1973 or 1974, Ford applied for the D. O. Coordinator position at Grissom High School and was interviewed. He was not awarded the job because D. O. Coordinator is a high school position, and Ford lacked the necessary training. Ford also complains that he did not receive a high school coaching position, though he did not recall whether he had ever applied for a position. Ford conceded that coaches have to teach high school courses and that the only high school course he was certified to teach was drivers' education.
 
 
 10
 Finally, Ford complains that he did not receive the principalship at Huntsville Middle School, for which he applied in 1975. Black parents complained that Ford was excessively harsh in disciplining black students, especially the "hard core" students at Huntsville Middle School. Ford did not like administrative duties and stated that administration was not "his thing." Additionally, when Ford served as acting principal of Huntsville Middle School, teachers complained about his performance. According to the Superintendent, Ford did not get the Huntsville Middle School principalship primarily because a tenured principal, Mr. Shoemaker, applied for the position. Shoemaker's previous principalship was filled by another tenured principal. Ford had tenure only as a teacher.
 
 
 11
 (3) Ms. Dorothy Gurley is presently a curriculum specialist with supervision of 21 kindergarten teachers. She has applied once for a position as an elementary school supervisor and several times for an elementary school principalship. More recently, Gurley applied for a position as coordinator of elementary education, a position that did not exist at the time she applied. Evidence was introduced concerning the reasons Gurley did not receive some positions for which she applied. In each case, the school board's decision was justified on the basis of nonracial considerations, and there was no evidence that race ever affected the school board's decision in any way.
 
 
 12
 (4) Mr. Curtis Gurley has worked in the Huntsville school system for four years as a coach and physical education teacher. He is presently assigned to Westlawn Middle School, where he has been head coach for two years. Two years ago, Gurley applied for the position of head basketball coach at Butler High School. Mr. Rice, a white, was awarded the position on the recommendation of the principal of Butler, because Rice had coached for nine years in a high school varsity program.
 
 
 13
 (5) Mr. Onree Jackson has been an employee of the Huntsville Board of Education for seven years. He was employed his first year as a teacher-coach at Calvary Hill Junior High School. For the past six years he has been a teacher, assistant football coach, and freshman basketball coach at Lee High School. In 1976, Jackson applied for the position of head basketball coach at Huntsville High School. Jackson was interviewed by the Superintendent and was advised to apply for the job, but he did not receive it. A personal conflict existed between Jackson and the head football coach at Lee High. Additionally, during Jackson's employment at Lee High School, the principal had discussed with Jackson his leaving school without permission. Finally, Jackson did not receive his teaching certificate until his fifth year with the school system, and then he received only a Class B certificate.
 
 
 14
 (6) Mr. William Robinson has been the band director at Ed White Middle School for the past six years. He applied for the band directorship at Johnson High School when the high school first opened in 1972, but he was not appointed. This was the only vacancy in a band directorship since adoption of the unitary plan in 1971, and there were many applicants. The person appointed, Mr. Arnold Reichert, was the band director at Davis Hills (grades 1-9), and he had seven years experience. The Superintendent testified that Reichert was appointed because the students from Davis Hills would attend Johnson High School, whereas the students from Ed White Middle School would attend another high school. Therefore, the music education of the students from Davis Hills would be less disrupted by Reichert's appointment than by Robinson's appointment.
 
 
 15
 The Huntsville school system currently is operating under a desegregation plan approved by the court in 1971. The only provision in this plan relevant to the case on appeal is that staff members who work directly with children and professional staff who work on the administrative level must be hired and promoted without regard to race, color, or national origin. The plaintiffs in the case on appeal do not contend that the defendants have discriminated against blacks in the hiring process. The plaintiffs also do not challenge the school system's written policy that "qualified persons within the local system who have demonstrated their ability" will be given first consideration in filling openings in positions demanding more responsibility. The plaintiffs only complain that the defendants have racially discriminated in making promotion decisions.
 
 
 16
 The only specific promotion decisions about which the plaintiffs complain are those decisions involving the named plaintiffs, which decisions were reviewed and upheld earlier in this opinion. A determination of the merits of the plaintiffs' class claims, therefore, must depend at least in part on an examination of the student and personnel statistics for the school system.[2] At first blush, the statistics may be said to support the inference that the plaintiffs urge. It is necessary, however, to examine the statistics in light of the important fact that only 11.2% of the teachers in the school system are black. As stated, the plaintiffs do not contend that there has been any discrimination in the hiring of teachers. In fact, the total number of black teachers has increased 22.4% from September 1971 to September 1976. Because only 11.2% of the teachers are black, however, only 11.2% of the persons in the initial pool of potential applicants for promotions are black. Additionally, the number of blacks in supervisory and administrative positions generally has increased. When viewed in this light, the personnel statistics support the defendants' position that they have not discriminated against blacks in making promotion decisions. Any bad inference that could be drawn from the statistics was resolved in favor of the defendants by the district court's determinations of credibility. After hearing the testimony in the case on appeal, the district court specifically found that the defendants had acted in good faith and had not racially discriminated in making promotion decisions.
 
 
 17
 Discrimination in promotions is not proved merely by the absence of blacks in particular positions in particular schools. For a cause of action to exist, the defendants actually must have discriminated on the basis of race. In the case on appeal, the plaintiffs conceded at trial that whites with credentials equivalent to or superior to the plaintiffs' credentials were passed over for the same jobs and that each person who was promoted was qualified. We affirm the district court holding that the defendants have not racially discriminated in making promotion decisions.
 
 
 18
 II. Alleged Singleton Violations.
 
 
 19
 Plaintiffs Mr. Horace Fields and Mr. Jerry Davis claim that the defendants demoted them in violation of Singleton. The plaintiffs' claims and the evidence taken concerning their claims can be summarized briefly.
 
 
 20
 (1) Mr. Horace Fields served as the principal of Council High School from 1953 to 1967. When Council was converted from a high school to a junior high school, Fields continued as the principal of the junior high school and concurrently served as a principal of West End Elementary School. In 1969, Fields became the principal of Calvary Hill Junior High School and Elementary School. In 1973, he was appointed to the Central Office as Director of the Careers Opportunities Program. Fields voluntarily left the school system to become the Registrar of Alabama A & M University. He now claims that he suffered a demotion in 1967 and that the defendants have violated Singleton by failing to offer him future high school principalships. Fields does not ask that he be reinstated; he asks only for money damages.[3]
 
 
 21
 (2) Mr. Jerry Davis worked as head basketball coach at Council High School from 1957 to 1967. When Council was converted to a junior high school in 1967, Davis was appointed principal of West End and Council Elementary Schools, where he stayed until 1971. He then was appointed assistant principal at Butler High School, which Davis complains was a demotion. Davis also complains that he did not receive the principalship at Butler High School in 1975 and that he was never offered a head basketball coaching position after 1967, apparently on the theory that his appointment as a principal of two elementary schools was a demotion.
 
 
 22
 Neither Fields nor Davis can be granted relief. Neither plaintiff proved that he suffered a demotion as defined in Singleton,[4] though the plaintiff carries this burden. Lee v. Pickens County School System, 563 F.2d 143, 145-46 (5th Cir. 1977); Ayers v. Western Line Consolidated School District, 555 F.2d 1309, 1321 (5th Cir. 1977); Barnes v. Jones County School District, 544 F.2d 804, 806 (5th Cir. 1977); contra, United States v. Gadsden County School District, 539 F.2d 1369, 1373 (5th Cir. 1976); Lee v. Macon County Board of Education, 456 F.2d 1371, 1373 (5th Cir. 1972). A court must examine the particular facts of the case before it to determine whether the plaintiff has suffered a demotion. Lee v. Pickens County School System, 563 F.2d 143, 146 n. 2 (5th Cir. 1977); United States v. Gadsden County School District, 539 F.2d 1369, 1375-76 (5th Cir. 1976). Application of a per se rule would require courts to ignore relevant and significant factors, such as the number of students in the schools in which the plaintiff was previously and is presently employed. Thus, a per se approach would not serve the desired ends of Singleton. Cf. Bassett v. Atlanta Independent School District, 485 F.2d 1268, 1271 (5th Cir. 1973). Davis' complaint that he did not receive the principalship at Butler High School in 1975 is not cognizable under Singleton, because Singleton does not apply to a failure to receive a promotion. See Lee v. Russell County Board of Education,563 F.2d 1159, 1161 (5th Cir. 1977).
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 Mr. Charles Ford, one of the eight plaintiffs, initiated the present action by filing a motion for further relief "on behalf of himself and other members of the sub-class similarly situated." Ford's motion described the sub-class as "all black teachers and administrators who have, in the period embraced by this litigation, been employed by the Huntsville School Board, those who are presently employed by the said school board, and those who will in the future be employed by the Birmingham School Board as teachers or administrators."
 
 
 [2]
 The relevant statistics are as follows:
 percentage September September
black 1971 1976
-------------------- --------- ---------
students 16.61% 21.28%
principals 2.9 8.57
ass't. principals 26 17.85
teachers 9.7 11.2
Central Office staff -- 29
social workers and
 others -- 24
 
 
 [3]
 Although Fields' alleged demotion occurred before February 1, 1970, the effective date of Singleton, he still is eligible to proceed under Singleton. Lee v. Macon County Board of Education, 453 F.2d 1104 (5th Cir. 1971)
 
 
 [4]
 The court in Singleton defined a "demotion" as:
 (A)ny re-assignment (1) under which the staff member receives less pay or has less responsibility than under the assignment he held previously, (2) which requires a lesser degree of skill than did the assignment he held previously, or (3) under which the staff member is asked to teach a subject or grade other than one for which he is certified or for which he has had substantial experience within a reasonably current period. In general and depending upon the subject matter involved, five years is such a reasonable period.
 419 F.2d at 1218.