**Warren G. COUSIN, Plaintiff-Appellant,**

v.

**BOARD OF TRUSTEES OF HOUSTON MUNICIPAL SEPARATE SCHOOL DISTRICT et al., Defendants-Appellees.**

No. 80–3126
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

June 16, 1981.

---

Kenneth Mayfield, Tupelo, Miss., for plaintiff-appellant.

Armis Hawkins, Houston, Miss., for defendants-appellees.

Before BROWN, POLITZ and TATE, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

### I. Background Of Facts

Prior to the 1970–71 school year, a segregated school system operating under the freedom of choice plan existed in Houston, Mississippi. Pursuant to a mutual agreement in the summer of 1969, the predominantly Black Chickasaw County School, grades 1–12, merged with the Houston Municipal Separate School System (HMSSS) and was renamed Westside High School. However, during the 1969–70 school year, the consolidated school district continued to operate segregated schools. A year later in 1970, a complaint seeking injunctive relief and the elimination of the dual school system was filed by twenty-five persons, including Appellant Cousin, the Black principal of Westside High School. As a result of this complaint, HMSSS was ordered to begin desegregation in the 1970–71 school year.

Upon implementation of the desegregation plan, the conversion of Westside High School to Houston Middle School reduced the number of high school principals from two to one. Appellant Cousin was assigned for the 1970–71 school year as assistant principal of the one remaining HMSSS high school.

In a challenge to the District Court's desegregation order, this Court, on appeal, found the order valid and instructed the District Court to determine whether the conversion from a segregated system to a unitary one had in fact been accomplished.[1]

---

1. *V. O. Taylor et al. v. Houston Municipal Separate School District et al.*, 444 F.2d 118 (5th Cir. 1971), the Court held:

The injunction was not, as appellants urge, a penalty visited upon them. The District Judge was under a duty to see that the plan was given judicial sanction, if not by a con-

*V. O. Taylor et al. v. Houston Municipal Separate School District, et al.*, 444 F.2d 118 (5th Cir. 1971). The Court received objections to the unitary status from the original plaintiffs, including Cousin, who lodged a personal objection of wrongful demotion from the position of principal to assistant principal. Cousin later withdrew his objection. After a two-day evidentiary hearing, the District Court entered a final order on December 17, 1971, overruling all pending objections and finding that the school system was currently operating as a unitary system of schools.[2] Appellant Cousin's present complaint, filed May 25, 1977, alleges that he had been demoted in 1970 at the time of desegregation and although qualified, had been passed over for subsequent principalships several times hence in violation of 42 U.S.C.A. §§ 1981, 1983 and § 2000e *et seq.* and his rights accruing under *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211 (5th Cir. 1971) (*Singleton III*) (*en banc*) *rev'd and remanded on other grounds*, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 530 (1971).

At the time of his alleged demotion, Cousin was certified as a secondary school principal by the State of Mississippi having completed his B.S. degree in 1955 from Rusk College in Holly Springs, Mississippi and 16 hours of graduate credit in supervision from Tuskagee Institute, Tuskagee, Alabama. In addition, Cousin had 10 years of experience as a high school principal; 4

years experience as an assistant principal and 5 years experience as a classroom teacher. In 1973, Cousin became certified under the Southern Association of Schools and Colleges when he completed his Masters degree and received a AA certificate.

The District Court found that the school district was not racially motivated when it abolished the position of assistant principal in 1975 and failed to assign Cousin to a high school principal's position in either 1975–76 or 1977–78. The Court also found that a six year statute of limitations prohibited Cousin from raising any claims prior to May 1971, and that there were no *Singleton III* rights with respect to claims after the school system was found to be unitary on December 17, 1971.

In the present appeal, Cousin reiterates his *Singleton III* claim and challenges the burden of proof standards which were employed by the District Court in reaching the conclusion that race was not a motivating factor in HMSSS's hiring practices. Having determined that Cousin's *Singleton III* issue is dispositive of the present appeal, however, we do not reach those issues dealing with the burden of proof.

■ In our review we are bound by the District Court's finding of subsidiary facts which are themselves not clearly erroneous. *Causey v. Ford Motor Co.*, 516 F.2d 416 (5th Cir. 1975); *see also Danner v. United States Civil Service Commission*, 635 F.2d 427, at

sent decree then by the Court's own decree, and to see that not only did the plan promise to end the dual system in September, 1970, but that in actuality it did so. He did not abuse his discretion by entering the injunction, and would have erred had he not done so.

Counsel for the parties represent to this Court that there are not involved in the case any of the issues embraced in *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554, and that the system is unitary.

It is ordered that the judgment of the District Court is affirmed. The cause is remanded to the District Court with instructions to determine if the system is unitary and if so to enter a final order terminating the case.

**2.** The Court entered the following order:

After considering all of the same and argument of counsel, the Court, in an oral opinion rendered from the bench, determined that defendant School District is presently operating in its district a unitary system of schools. It is, therefore, on such findings and pursuant to said oral opinion.

ORDERED AND ADJUDICATED:

(i) That the school system currently operated by defendant School District is a unitary system of schools;

(ii) That defendants' Motion to Dismiss shall be and the same hereby is sustained;

(iii) That this action shall be and the same hereby is finally dismissed and terminated on the docket of this Court; and

(iv) That defendants shall be and they hereby are taxed with the cost of this action, to be assessed by the Clerk of the Court in due course.

430 (5th Cir. 1981); *Ramirez v. Sloss*, 615 F.2d 163, 169 (5th Cir. 1980); *East v. Romaine Inc.*, 518 F.2d 332, 339 (5th Cir. 1975). However, we are not bound by the clearly erroneous rule in regard to legal conclusions reached by the District Court, and we can make independent determinations on ultimate issues. *U. S. v. Mississippi Valley Generating Co.*, 364 U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268, 275 (1961); *Robbins v. White-Wilson Medical Clinic, Inc.*, 642 F.2d 153 (5th Cir. 1981).[3]

## II. The Singleton Claim

Recognizing that the transition from a dual to a unitary system often results in a reduction of personnel, this Court in *Singleton III* designated a two-fold protection for those who are affected by staff reduction and rearrangement due to integration. First, the school district's dismissals and demotions must be accomplished based on objective non-racial written criteria developed by the school board and made available for public inspection. Cousin alleges that no such standards were followed when he was demoted to the assistant principalship. Second, "if there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race, color, or national origin different from that of the individual dismissed or demoted, until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so." *Singleton III*, 419 F.2d at 1218. Cousin relies principally on this second aspect of *Singleton III*, contending that he was not given the opportunity before other applicants to accept or refuse the principal positions which became available in the district beginning in 1972.

The District Court addressed Cousin's *Singleton III* claim twice—at the outset of the trial and in its memorandum opinion. The Court initially stated:

There is no *Singleton* problem in this case. *Singleton* does not apply after the school district becomes unitary. That has been held several times by the Fifth Circuit. There is no *Singleton* question in this law suit, by virtue of the fact that everything that is subject of proof in this case by the plaintiff relates to matters happening after the unitary system of schools has been adjudicated.

Under the Fifth Circuit's holding in several cases, *Singleton* applies only in the process of desegregation, whether it be in the movement of faculty members in order to comply with the desegregation order or to effect the unitary system. Once the unitary system is effected, *Singleton* does not apply.

Later, in connection with HMSSS's achievement of unitary status, the Court expressed estoppel and statute of limitation theories as additional reasons for precluding *Singleton III* rights.

Our review of *Singleton III*, and the cases construing it, leads us to conclude that the District Court only dealt with the first dimension of *Singleton III*, and, thus erred in not applying the second aspect of *Singleton III* to the facts of the present case.

■ In order to prevail under either prong of *Singleton III*, there must be a desegregation-related reduction in personnel resulting in a demotion or dismissal. *Hereford v. Huntsville Board of Education*, 574 F.2d 268 (5th Cir. 1978); *Hardy v. Por-*

---

**3.** In *Thompson v. Leland Police Dept.*, 633 F.2d 1111, 1112 (5th Cir. 1980), the Court stated:

The clearly erroneous standard of appellate review applies to subsidiary facts but does not apply to ultimate facts. A finding of discrimination or nondiscrimination falls into the category of ultimate fact, therefore we must make an independent determination of the allegations of discrimination. In the process we examine the record to see if the ultimate finding is supported by requisite subsidiary facts. *Thompson*, 633 F.2d at

1112. *Accord Parson v. Kaiser Aluminum & Chemical Corp.*, 575 F.2d 1374, 1382–83 (5th Cir. 1978), *cert. denied*, 441 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979).

In addition, we note that the Supreme Court in *Texas Dep't of Community Affairs v. Burdine*, — U.S. —, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), did not reach the question of whether a finding of intentional discrimination should be viewed as an ultimate fact. *Id.* at —, 101 S.Ct. at 1097 n.12, 67 L.Ed.2d at 219 n.12.

ter, 546 F.2d 1165 (5th Cir. 1977); *Ayers v. Western Lines Consolidated School District,* 555 F.2d 1309 (5th Cir. 1977); *Lee v. Pickens County School System,* 563 F.2d 143 (5th Cir. 1977); *Lee v. Russell County Board of Education,* 563 F.2d 1159 (5th Cir. 1977); *Pickens v. Okolona Municipal Separate School District,* 527 F.2d 358 (5th Cir. 1976). Once these factors have been demonstrated to exist before full compliance with desegregation has been achieved, *Singleton III* becomes operative.

Looking at these factors in light of the present record, we find a 1970–71 desegregation order, a reduction in high school principal positions from two to one, and the reassignment of Appellant Cousin from a high school principal's position to an assistant principalship. This constituted a demotion under *Singleton III* standards which includes any reassignment: (i) under which the staff member receives less pay or has less responsibility than under the assignment he held previously, (ii) which requires a lesser degree of skill than did the assignment he held previously, or (iii) under which the staff member is asked to keep a subject or grade other than one for which he is certified or for which he has had substantial experience within a reasonable current period. In general and depending upon the subject matter involved, five years is such a reasonable period. *Singleton III,* 419 F.2d at 1218.

Whatever might be the correctness of the Trial Court's initial statement of the law concerning *Singleton III's* inapplicability, as applied to the first part of *Singleton III,* once a district has achieved unitary status, we held in *Ayers* that the District Court had not erred in finding a *Singleton III* violation since the school district there (i) was still in the process of becoming unitary and (ii) had not applied "objective and reasonable non-discriminating standards" in effecting reductions. *Ayers,* 555 F.2d at 1321. *See, e. g., Lee v. Pickens County School System,* 563 F.2d 143, 144, 147 n.4 (5th Cir. 1977); *United States v. Coffeeville Consolidated School District,* 513 F.2d 244, 247 (5th Cir. 1975); *United States v. Texas,* 509 F.2d 192, 193 (5th Cir. 1975); *Thompson v. Madison County Board of Education,* 496 F.2d 682 (5th Cir. 1974); *Adams v. Rankin County Board of Education,* 485 F.2d 324, 327 n.2 (5th Cir. 1973).

Although we have found no cases precisely on point concerning the second aspect of *Singleton III* protection—the recall rights—we decline to hold them foreclosed by a district's subsequent achievement of unitary status where the assignment, at the time it was made and thereafter up to the time of unitary status, was in violation of *Singleton III.* To hold otherwise would, we believe, eviscerate the purpose and protective remedy which *Singleton III* affords to those victims of desegregation-related reductions. This conclusion is not only logically sound given the rationale behind *Singleton III,* but consistent with language construing *Singleton III.* After first finding an application of *Singleton III* in *Moore v. Tangipahoa Parish School Board,* 594 F.2d 489 (5th Cir. 1979), we held that Jones and Marzett, who were dismissed in the summer of 1969, had their *Singleton III* rights violated when the school board failed to offer them subsequent teaching positions which became available in the 1969–70 school year and for "succeeding terms." *Moore,* 594 F.2d at 491.

In summary, considering the state of facts in the present record, we reiterate what we have previously stated concerning the second aspect of *Singleton III.*

> It is clear to this Court that under the *Singleton* approach to the Fourteenth Amendment, if a principal is demoted or dismissed pursuant to a desegregation order and if his objective qualifications for his principalship do not diminish in an absolute sense after the issuance of the order and his demotion or dismissal, then he *must* be given opportunity to assume any new principalships or any position tantamount to his lost principalship prior to the offering of the position to new applicants of another race.

*Lee v. Macon County Board of Education,* 453 F.2d 1104, 1111 (5th Cir. 1971).

■ Because the Court below was incorrect in its premise precluding *Singleton III*, the two collateral reasons it asserts for finding *Singleton III* inapplicable are irrelevant. The Court attempts to apply an estoppel argument by finding that Cousin is bound by the prior adjudication of unitary status. (*See*, note 2, *supra*). This determination of unitary status could not now operate as an estoppel to Cousin who neither challenges nor relies on a finding of unitary status to support his present *Singleton III* claim. Further, the Court found that any claims arising under *Singleton III*—1970–71—would now be barred by Mississippi's six year statute of limitations. Mississippi law provides that "all actions for which no other period of limitation is prescribed shall be commenced within six years after the cause of such action accrued, and not after. Miss.Code Ann. § 15–1–49 (1972). The Court's finding of the general six year statute of limitation was appropriate since there is no relevant federal statute of limitations for a § 1981 cause of action nor specific Mississippi statute analogous to actions based on racial discrimination in employment. *See, e. g., Walton v. Utility Products, Inc.*, 424 F.Supp. 1145, 1147 (N.D. Miss.1976); *Heath v. D.H. Baldwin Co.*, 447 F.Supp. 495, 496, 504 (N.D.Miss.1977). Moreover, under this statute, the present suit which was filed in May 1977, would be untimely if we were to accept the Trial Court's time table which implies that the date of the attachment of *Singleton III* rights and the accrual of a cause of action under the second prong of *Singleton III* are one and the same. We decline to do so. Rather, it seems unquestionably logical that a cause of action under the second prong of *Singleton III* would not accrue until a *Singleton III* violation occurred, i. e., an actual vacancy and an actual denial to the *Singleton III* protected person to accept or refuse employment. In the present case, the first vacancy in a principal's position subsequent to the attachment of Cousin's *Singleton III* rights, was for the 1972–73 school year— within six years of the filing of the present action.

■ Finally, we briefly comment on that portion of the second prong of *Singleton III* requiring the displaced applicant to be "qualified" in order to come within the protective ambit of *Singleton III*. Implicit in *Singleton III* is the per se presumption regarding qualifications—that the applicant was not unqualified when he held a similar position in the school district prior to the desegregation order. This presumption was erected to insure compliance with the Fourteenth Amendment in all phases of desegregation. Accordingly, as we have already stated:

> In order to establish that a former principal was not 'qualified,' and therefore not within the protective penumbra of *Singleton*, a school board would have to establish the principal's lack of 'qualification' by means of objective and absolute criteria, not by means of comparison with another applicant or by means of administrative institution. The board must show the former principal to be independently unqualified to assume the new opening. And in order to fulfill that burden the board must have to establish quite clearly why one who was qualified prior to a desegregation order suddenly became unqualified after the order.

*Lee*, 453 F.2d at 1101.

■ Because we cannot determine from the testimony in the present record or the Judge's factfindings whether or not HMSSS satisfied this particular burden under *Singleton III*,[4] we remand with the instruction that the Court make not only

---

4. In this regard, we emphasize that under the settled law of this Circuit, displaced faculty members who otherwise meet *Singleton III* standards need only be "minimally qualified" in order to acquire *Singleton III* recall rights. That is, where *Singleton III* is called for, a person of another race may not be chosen because he/she is more qualified than the *Single-* *ton III* protectee. *Moore*, 594 F.2d at 496; *see United States v. Jefferson County Board of Education*, 380 F.2d 385, 394 (5th Cir. 1967) (*en banc*), *aff'g with modifications*, 372 F.2d 836 (5th Cir.), *cert. denied, Caddo Parish School Board v. United States*, 389 U.S. 840, 88 S.Ct. 67, 19 L.Ed.2d 103 (1967).

this determination but also apply the principles of *Singleton III* which we have expressed in order to reach an ultimate finding on the issue of discrimination.

REVERSED AND REMANDED.