Anthony T. LEE et al., Plaintiffs,

United States of America, Intervenor and Amicus Curiae,

National Education Association, Inc., Intervenor-Appellant,

v.

ROANOKE CITY BOARD OF EDUCATION et al., Defendants-Appellees.

No. 72–1656.

United States Court of Appeals, Fifth Circuit.

June 28, 1972.

Solomon S. Seay, Jr., Montgomery, Ala., for National Education Ass'n, Inc.

David L. Norman, Asst. U. S. Atty. Gen., Dept. of Justice, Civil Rights Div., Washington, D. C., Ira DeMent, U. S. Atty., Montgomery, Ala., for the United States.

Lewis H. Hammer, Jr., Roanoke, Ala., for Roanoke City Board of Education, and others.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

█ This case involves the rights of a tenured teacher displaced from her job by the court-ordered closing of a black school. We hold that the teacher, Mrs. Attrie Henderson, was protected by Singleton v. Jackson Municipal Separate School District, 5 Cir. 1969, 419 F.2d 1211, and by the district court order from "demotion" to non-tenured status. Accordingly, the Roanoke City Board of Education may dismiss her only in ac-

cordance with the procedures of Alabama law applicable to tenured teachers.

For more than fifty years, the Randolph County school system and the Roanoke City school system, Randolph County, Alabama, operated as separate entities. The Randolph County Board of Education operated a number of schools throughout the county including County Training, an all-black school within the City of Roanoke. The Roanoke City Board of Education operated one high school and one elementary school within the city limits. On June 16, 1970, a three-judge District Court for the Middle District of Alabama ordered County Training closed as part of a comprehensive desegregation order. *See* Lee v. Macon County Bd. of Education, M.D. Ala.1970, 317 F.Supp. 95. The Randolph County Board of Education sent letters to all teachers at County Training advising them that the school would be closed and that they would not be rehired.

On June 18, 1970, the National Education Association asked for a temporary restraining order and a preliminary injunction against the Randolph County Board to prevent the Board from cancelling these teachers' contracts. The district court, on June 23, 1970, granted a temporary restraining order and required the Randolph County Board to file with the court objective and reasonable non-discriminatory criteria to be used in hiring, dismissing, transferring, or demoting faculty and staff members.[1] The County Board filed its response, and on July 30, 1970, District Judge Frank M. Johnson entered an order requiring the City and County Boards (see footnote 1) to absorb the teachers displaced as a result of the closing of County Training, requiring the Roanoke City Board of Education to give priority to the displaced black teachers, and incorporating the *Singleton* requirements on

---

1. On June 24, 1970, the three-judge district court transferred the Lee v. Macon County cases to single judges. Lee v. Randolph County Board of Education became C.A. No. 847–E and Lee v. Roanoke City Board of Education became C.A. No. 855–E. On July 13, 1970, the Roanoke City Board of Education was made a party to the suit against the County Board, C.A. No. 847–E.

desegregation of faculty and staff. *See* 419 F.2d 1211, 1217–1218.

Mrs. Attrie Henderson, one of the black teachers displaced by the closing of County Training, had been employed by the County Board as a teacher for thirty-one years and had taught ·at County Training for twenty years. She was a tenured teacher.[2] On June 17, 1970, she signed a contract with the Roanoke City Board of Education to teach in the City system for the 1970–71 school term. At the end of that term, the City Board would not renew her contract. Alabama law provides a comprehensive scheme governing the rights of tenured teachers, including the procedure to be used for dismissal of a tenured teacher. *See* Ala.Code, Title 52, § 351 et seq.[3] Mrs. Henderson was not

2. —Any teacher in the public schools, who shall meet the following requirements, shall attain continuing service status: (a) Such teacher shall have served under contract as a teacher in the same county or city school system for three consecutive school years and shall thereafter be re-employed in such county or city school system the succeeding school year. An instructor who has attained continuing service status and who is promoted to principal or supervisor shall serve for three consecutive school years as a principal or supervisor before attaining continuing service status as a principal or supervisor. Such promotion shall in nowise jeopardize the continuing service status of the teacher as an instructor; and, should the promoted instructor not be retained as principal or supervisor, his salary would be reduced to the salary paid instructors in accordance with the prevailing salary schedule in the county or city school system.
   Ala.Code, Title 52, § 352

3. The grounds for cancellation of a tenured teacher's employment contract are governed by Section 358.
   —Cancellation of an employment contract with a teacher on continuing service status may be made for incompetency, insubordination, neglect of duty, immorality, justifiable decrease in the number of teaching positions, or other good and just cause; but cancellation may not be made for political or personal reasons.
   Ala.Code, Title 52, § 358
   The procedure for cancellation of a tenured teacher's employment contract is governed by Section 359.
   —An employment contract with a teacher on continuing service status may be cancelled only in the following manner:
   The employing board of education shall give notice in writing to the teacher stating in detail the reasons for the proposed cancellation and naming the exact time and place at which the teacher may appear before the board to answer said notice, which date shall not be less than twenty nor more than thirty days after the service of such notice to the teacher by United States registered mail with postage prepaid thereon, to said teacher's last known address, such notice shall also inform the teacher that in order to contest said cancellation the teacher must file with the board at least five days prior to the date the matter is set for hearing notice of an intention to contest. Nothing herein provided is intended to prevent the suspension of a teacher pending a hearing on such proposed cancellation and the final determination thereof. No teacher dismissed as the result of such hearing shall receive compensation for the period of such suspension. If the teacher does not file an intention to contest with the board at least five days prior to the date the matter is set for hearing then the employing board may dismiss the teacher by a majority vote and such dismissal shall be final. At a contested hearing, which shall be public or private at the discretion of the teacher, each party shall have a right to appear with or without counsel and shall have a right to be heard and to present the testimony of witnesses and other evidence bearing upon the reasons for the proposed cancellation of such contract and shall have a right to cross-examine the adverse witnesses. The board, or its authorized representative, shall have power to administer oaths, take depositions, and issue subpoenas to compel the attendance of witnesses and production of papers necessary as evidence in connection with the dispute or claim. If requested, the board shall issue subpoenas for witnesses to testify either in support of the charges or on behalf of the teacher and such witnesses shall be entitled to receive the same mileage and per diem as witnesses called in civil cases in the circuit court of the county where the hearing is held, the same to be paid out of school funds, provided, however, the board shall not be accountable for the witness fees of more

accorded the statutory procedural rights due a tenured teacher.

On November 23, 1971, the National Education Association filed a motion for supplemental relief alleging that Mrs. Henderson was dismissed contrary to the procedural requirements of Alabama law and asking that she be reinstated, awarded back pay, and given tenure rights. The N.E.A. contended that, when Mrs. Henderson was employed by the Roanoke City school system after the court-ordered closing of County Training, she retained her tenured status. The City Board contended that the dismissal was proper on the ground that Mrs. Henderson lost her tenured status when she "voluntarily" sought employment with the Roanoke City school system. On February 18, 1972, District Judge Robert Varner granted the Board's motion to dismiss the plaintiff's request for relief, holding that "tenure was terminated with the Randolph County Training School and that one year's service with the Roanoke City School System did not reinstate her to tenure rights."

In Singleton v. Jackson Municipal Separate School District, *supra*, this Court, sitting en banc, ordered non-discriminatory treatment of faculty and staff during the desegregation process:

Staff members who work directly with children, and professional staff who work on the administrative level will be hired, assigned, promoted, paid, demoted, dismissed, and otherwise treated without regard to race, color, or national origin.

If there is to be a reduction in the number of principals, teachers, teacher-aides, or other professional staff employed by the school district which will result in a dismissal or demotion of any such staff members, the staff member to be dismissed or demoted must be selected on the basis of objective and reasonable non-discriminatory standards from among all the staff of the school district. In addition if there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race, color, or national origin different from that of the individual dismissed or demoted until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so.

Prior to such a reduction, the school board will develop or require the development of nonracial objective criteria to be used in selecting the staff member who is to be dismissed or demoted. These criteria shall be available for public inspection and shall be retained by the school district. The school district also shall record and preserve the evaluation of staff members under the criteria. Such evaluation shall be made available upon request to the dismissed or demoted employee.

419 F.2d at 1218. *See also* United States v. Texas Education Agency (La Vega Ind. School District), 5 Cir. 1972, 452 F.2d 1203 [No. 71–3135, 1972]; Lee v. Macon County Bd. of Education, 5

than ten of the witnesses subpoenaed by the teacher. In case a person refuses to obey such subpoena the board, or its authorized representative, may invoke the aid of the circuit court in order that the testimony or evidence be produced; and upon proper showing, such court shall issue a subpoena or order requiring such person to appear before the board or its representative and produce evidence and give testimony relating to the matter at issue; a person failing to obey the court's subpoena or order shall be punishable by the court as for contempt. It shall be the duty of said board to employ a competent stenographer to keep and transcribe a record of the proceedings at such hearing. After each party has presented its case at said hearing, the employing board of education may determine the question of the cancellation of the contract by a majority vote, or it may defer action regarding the decision for a period not to exceed five days. Its action and vote, whether taken immediately following the hearing or within five days thereafter, shall be evidenced by the minute proceedings of the board and shall be only after full compliance with this section.

Ala.Code, Title 52, § 359.

Cir. 1971, 453 F.2d 1104. *Singleton* was decided on December 1, 1969, and, as a result, its requirements are clearly applicable to the present controversy.

Moreover, the district court order of July 30, 1970, incorporates the requirements of *Singleton* and governs the status of Mrs. Henderson. Although County Training was ordered closed by the court in June, and Mrs. Henderson was reemployed by the City school system shortly thereafter, the order, by its terms, governs this controversy. The district court order required the City Board of Education and the County Board of Education to give preference, in new hiring, to teachers displaced as a result of the closing of County Training School.[4] The order specifically provided that the tenured teachers from County Training be "placed in positions comparable to those held by the teachers last year." This order operated to clarify the status of the displaced teachers. It was fully applicable as of the date of the closing of County Training. Even if any doubt existed as to the applicability of the order as of the earlier date, the decision in *Singleton*, which predated the closing, was unquestionably applicable and required the same "objective and reasonable non-discriminatory" procedures spelled out in the July 30th order.[5]

We now consider whether the refusal of the City Board to grant Mrs. Henderson tenured status was a violation of protections owed to her. It is clear, and the district court so held, that the County Training teachers were not dismissed pursuant to objective non-racial criteria. They were dismissed because an all-black school was closed by circuit order as part of the conversion to a unitary school system. The County Board compounded the non-objective dismissal by notifying the teachers that

4. The Roanoke City Board of Education must give priority to the black teachers that have been displaced by reason of the closing of the Randolph County Training School, for teaching positions effective with the commencement of this coming school year over non-tenured teachers in the Roanoke City System, where the teachers in the Randolph County Training School are equally as qualified in degree and by certificate as those non-tenured teachers that the Roanoke Board proposes to hire—the twenty-one, as I understand it.

As far as the Randolph County School System is concerned, it is Ordered that the Randolph County Board of Education and its Superintendent be and each is hereby enjoined from hiring any other teachers that have not already been hired for the 1970–71 school year, until preference is given to those teachers that were formerly employed and formerly taught in the Randolph County Training School. It is further Ordered that the Randolph County Board of Education, and its Superintendent, be and each is hereby enjoined from hiring any additional teachers from outside its system until all of the teachers who were tenured and who had their degrees and who were certified by the State Department of Education that taught in the Randolph County Board of Education or the Roanoke Board of Education.

Now, as far as your non-tenured and non-certified teachers are concerned, it is Ordered that the Randolph County Board of Education and its Superintendent be and each is hereby enjoined from hiring any non-tenured or non-certified teachers until all of those teachers that taught— who had tenure and who are certified who taught at the Randolph County Training School—have been placed in positions comparable to those held by the teachers last year.
District Court Order of July 30, 1970.

5. The district court order, at one point, referred to "teachers that have not yet been placed". Because Mrs. Henderson was "placed" when the district court's order was issued, it is argued that she is not entitled to the protection of the order. We seriously doubt that the district court order was intended to cover only those who had not been reemployed. The court's order frequently refers to the displaced teachers as a group, without any differentiation as to those who had been rehired and those who had not. It would have been anomalous to protect the rights of those who had not secured employment while ignoring those, like Mrs. Henderson, who had. Assuming, however that the order was not, by its terms, applicable to Mrs. Henderson, the earlier decision in *Singleton* operated to protect her.

they would not be rehired because of the closing.[6]

■ In this circuit federal law requires that teachers displaced as a result of the court-ordered closing of a black school be given positions comparable to those they formerly occupied. *Singleton* requires no less, see 419 F.2d at 1218, and the district court order explicitly so requires. See footnote 4. *See also* Sparks v. Griffin, 5 Cir. 1972, 460 F.2d 433; United States v. Texas Education Agency (La Vega Ind. School District), 5 Cir. 1972, 452 F.2d 1203; Lee v. Macon County, 5 Cir. 1971, 453 F.2d 1104; Rauls v. Baker County, 5 Cir. 1971, 445 F.2d 825. When Mrs. Henderson was reemployed by the City Board without granting her the tenure rights she had previously held with the County Board, she was "demoted" within the terms of *Singleton* and not "placed in [a] . . . comparable [position]" within the terms of the district court order.[7]

■ We hold that Mrs. Henderson must be given tenure rights by the Roanoke City Board of Education and reinstated in her job with backpay. A contrary result would sanction an impermissible dismissal of a teacher as a result of a desegregation order, when this Court has consistently barred such dismissals except on the basis of non-racial objective criteria. *See Singleton, supra.*

We do not, by our decision, require the Board to retain an unqualified or incompetent teacher. If the allegations as to Mrs. Henderson's incompetency contained in the affidavit of the City Superintendent are true, dismissal proceedings may be appropriate. We require only that these proceedings be conducted in accordance with her rights as a tenured teacher under Alabama law. *See* Code of Ala., Title 52, §§ 356–357. This is no more than a teacher for thirty-one years, forced to change schools because of desegregation, deserves.

Reversed.

6. The Court finds from the evidence presented that the letter that the Superintendent addressed to the Negro teachers that had previously taught in the Randolph County Training School to the effect that they would not be rehired because of the closing of that school by the Federal Court was evidently an interpretation of the order that the three-judge court entered in that case on June 16, 1970. The Court finds that that letter was in direct violation of the provisions in that three-judge court order relating to demotions. The Court finds that the basis for that notice to the teachers that were being displaced by reason of the closing of the Randolph County Training School was not pursuant to nonracial objective criteria, as required by this Court's order—the three-judge court's order—of June 16, 1970.
District Court Order of July 30, 1970.

7. We give no weight to the appellees' argument that Mrs. Henderson "voluntarily" sought reemployment with the City Board in a non-tenured position and, therefore, should be deemed to have waived her right to "comparable", tenured employment. There is no finding as to the voluntariness of Mrs. Henderson's search for employment. In the circumstances, we could hardly characterize it as "voluntary". County Training was ordered closed, and she was, at the time she secured employment with the City Board, out of a job. Assuming that she had no actual knowledge of the closing, the protracted litigation, having as one of its primary goals the closing of the all-black school within the city limits, was surely common knowledge. Even if Mrs. Henderson's successful search for employment was "voluntary", we are reluctant to use this factor as a basis for excluding her from the protection of federal law and the district court order. To do so would be indeed anomalous.