**Joseph HARDY, Plaintiff-Appellant,**

**v.**

**Leon L. PORTER, Jr., et al.,**
**Defendants-Appellees.**

**No. 76–1434.**

United States Court of Appeals,
Fifth Circuit.

Feb. 10, 1977.

Rehearing and Rehearing En Banc Denied
March 18, 1977.

---

Fred L. Banks, Jr., Jackson, Miss., Phillip J. Brookins, New York City, Nausead Stewart, Jackson, Miss., Melvyn R. Leventhal, Jack Greenberg, New York City, for plaintiff-appellant.

Semmes Luckett, Clarksdale, Miss., for defendants-appellees.

Before COLEMAN, GODBOLD and HILL, Circuit Judges.

GODBOLD, Circuit Judge:

This appeal presents a problem in the adjustment of the rights of a school board and one of its former employees, a black school principal allegedly demoted as a result of court-ordered integration.

Prior to the 1970–1971 school year, plaintiff-appellant Joseph Hardy was employed by the Clarksdale (Mississippi) Municipal Separate School District as principal of an all-black high school. A court-ordered reorganization of the district's schools resulted in plaintiff's displacement in 1971. He was offered and accepted a position as assistant principal at the newly integrated Clarksdale High School and served in that capacity for the 1970–1971 school year. On June 3, 1971, Hardy resigned from the Clarksdale school system and thereafter began postgraduate studies at Auburn University, located in Alabama. In February 1972 he learned that the principalship of Clarksdale High School would be open for the 1972–73 school year. He applied for the position, but it was filled by a white. In the spring of 1974 Hardy heard that the principal was resigning, he again applied for the place, and was told that it already had been filled by the white assistant principal.

In August 1974 plaintiff brought this suit against officials of the school district, alleging that his transfer to the position of assistant principal at Clarksdale High School was a demotion accomplished without the "objective and reasonable nondiscriminatory standards" required by *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211, 1218 (CA 5, 1970), and that he was denied his right under *Singleton* to be offered the job of principal of Clarksdale High School when that position became vacant.[1] The complaint also contained a claim that because of his race plaintiff had been denied the principalship of Clarksdale High School during every year since 1972–73, which was the first school year with respect to which he had sought to fill a vacancy in that position.

The district court found that Hardy voluntarily resigned from the school system

---

1. An order applying the provisions of *Singleton* to the Clarksdale school system was entered by this court on January 10, 1970.

and concluded, relying upon dictum in *Lee v. Macon County Board of Education*, 453 F.2d 1104, 1108 (CA 5, 1971), that this voluntary resignation resulted in the loss of all his *Singleton* rights. The court also found that plaintiff had not proved racial discrimination either in his reassignment as assistant principal or in the denial of his two subsequent applications for the position of principal at Clarksdale High School.

### I. Loss of *Singleton* rights.

The district court found that plaintiff resigned from his position as assistant principal of the desegregated Clarksdale High School in order to pursue postgraduate studies at Auburn University, for which purpose he had received a substantial financial grant from an unspecified source. It found that he resigned voluntarily, without pressure, without any feeling that he was treated unfairly or that his pay was improper, for the sole purpose of taking advantage of the substantial grant available to him. In short, his resignation was unrelated to school desegregation. Substantial evidence supports the trial court's conclusions. His letter of resignation was cordial in tone, and neither in his letter nor in any of his other dealings with school officials did he express dissatisfaction with his position. His stated reason for resigning was to pursue further education through the financial grant. He had been paid more as assistant principal than as principal before integration. His course of study, launched by the grant, enhanced his professional career, and he became dean and director of financial aid in a junior college. He did not communicate to the Board any desire for reemployment, or assert any right to reemployment, until February 1972.

■ Under the teaching of *Singleton*, the rights of teachers affected by staff reductions and rearrangements caused by integration are twofold. First, dismissals and demotions must be accomplished pursuant to "objective and reasonable nondiscriminatory standards," which must be developed by the school board and which "shall be available for public inspection and shall be retained by the school district." 419 F.2d at 1218. Plaintiff claims that no such standards were followed in the case of his transfer. Second, even if dismissals or demotions are made pursuant to acceptable nondiscriminatory criteria, displaced staff, if qualified, must be given a right of first refusal in cases of subsequent staff vacancies. Plaintiff also contends that this was refused to him.

In reaching the conclusion that plaintiff lost all his *Singleton* rights by resigning, the district judge relied on *Lee v. Macon County, supra,* where it was said of a demoted school principal that if he "voluntarily removed himself from the Muscle Shoals school system," he would "not be entitled to claim any succor under *Singleton.*" 453 F.2d at 1108.[2]

The district judge in the present case had the view that one who voluntarily leaves the school system forfeits his protection under *Singleton* regardless of his reason for leaving. We need not, and do not, embrace such a sweeping rule. According to the district court's findings, Hardy left the sys-

---

2. The theme of loss of *Singleton* rights by voluntary resignation was again taken up by this court in *Bassett v. Atlanta Independent School District*, 485 F.2d 1268 (CA 5, 1973):

 . . . *Singleton* criteria are satisfied by an offer of a comparable position to the displaced personnel. . . . There is no violation of *Singleton* criteria, however, if the displaced personnel voluntarily terminates his employment with the school district.

485 F.2d at 1271. Plaintiff Bassett, formerly a junior high principal, rejected the school board's offer of an assistant principalship, believing it to be a demotion, an action which led eventually to his termination from the school

system. The court stated that the critical question was whether the school board's alternative offer was a demotion. We apparently felt that it was not and that therefore the plaintiff's refusal to accept the position amounted to a voluntary resignation from the system. 485 F.2d at 1271–1272.

We remanded the case to the district court for determination of the advisability of giving plaintiff such a first refusal right as to future vacancies. This direction was apparently based on considerations of fairness arising from the fact that the *Singleton* case was very recent at the relevant times and may have been misunderstood by the parties.

tem for reasons unrelated to the desegregation process and to the inequities which *Singleton* is intended to remedy.

Appellant contends that it is both unjust and unconstitutional to eliminate his *Singleton* entitlements simply because he voluntarily left the school system, and that those rights can be lost only in accordance with the exacting standards of constitutional waiver. His arguments rest on a misapprehension of the nature of the *Singleton* provisions relating to displacements caused by integration. *Singleton* entitlements are not constitutional rights. Both the requirement that displacements be affected only in accordance with written, objective criteria and the requirement that displaced personnel be given a right of first refusal of subsequent vacancies are standards of conduct imposed upon school boards under court order. They are aspects of equitable remedies, designed by this court under its general equitable power to fashion relief for constitutional violations (in this case, maintenance of a segregated, dual school system) in accordance with principles of fairness and with a minimum of hardship to persons affected by large scale, court-ordered social change. The question of their reach is for this court to decide on nonconstitutional grounds.

We hold that plaintiff lost his *Singleton* rights when he resigned from the school system for reasons which the district court found upon sufficient evidence to have been unrelated to his earlier displacement.[3]

## II. Equal protection claims.

In addition to alleging violations of *Singleton* criteria, plaintiff charged that his original displacement, which he characterizes as a demotion, and the denials of his two subsequent applications for employment as principal, were racially discriminatory.

In the course of its oral opinion from the bench the court said that apart from *Singleton* it was "not persuaded" that defendants' decisions concerning plaintiff were racially motivated. However, in stating its oral findings (at the conclusion of the oral opinion) the court did not include the racial discrimination claim. Even if the court intended to make a dispositive finding on this claim, we are unable to say that consideration was given to the burden of proof under the doctrine of *Keyes v. School District No. 1*, 413 U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973). To the extent that the oral opinion sheds any light on this issue, it appears that the court had in mind that the burden was on the plaintiff, i. e.: "The statistical evidence presented by plaintiff is not alone sufficient to infer a pattern of racial discrimination in hiring administrative staff." We remand this issue for additional findings. Whether additional evidence will be taken is in the discretion of the district court.

We AFFIRM on the *Singleton* issue and, with respect to the racial discrimination issue VACATE and REMAND for further proceedings not inconsistent with this opinion.

COLEMAN, Circuit Judge, concurring in part and dissenting in part.

I concur in the part of the opinion of the Court which holds that Mr. Hardy's resignation put an end to his *Singleton* rights.

I do not perceive the necessity of a remand for further findings. See *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) and *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, —— U.S. ——, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). I think the District Judge meant that statistics alone could not carry the day, which is what

---

**3.** This holding in no way suggests, that a displaced teacher must accept an inferior assignment in order to gain and keep *Singleton* rights. *See Williams v. Albemarle City Board of Education*, 508 F.2d 1242 (CA 4, 1974).

In *Lee v. Roanoke City Board of Education*, 466 F.2d 1378 (CA 5, 1972), this court refused to find that acceptance of a demoted position, in a school system under court order to receive displaced personnel from a related system, constituted a voluntary departure from the original system. This holding is not in conflict with our opinion herein.

I think the Supreme Court has now clearly decided.