Mildred ELLISON, Margaret Beal, and Randall Hayes, Plaintiffs,

v.

CHILTON COUNTY BOARD OF EDU-CATION; Donald Hand, Individually and In His Official Capacity as Superin-tendent of Chilton County Board of Ed-ucation; and Neal Bice, Robert Hall, Evelyn Gibson, James Hill, Harry Fox, Sue Smith, and Allen Williams, Individ-ually and In Their Official Capacities as Members of the Chilton County Board of Education, Defendants.

No. 94–D–1423–N.

United States District Court, M.D. Alabama, Northern Division.

June 23, 1995.

Cynthia W. Clinton, Kenneth L. Thomas, Montgomery, AL, for plaintiffs.

Theron Stokes, Ala. Educ. Ass'n, Montgomery, AL, John Hollis Jackson, Jr., Clanton, AL, Leslie Allen, David Boyd, Montgomery, AL, for defendants.

## MEMORANDUM OPINION

DeMENT, District Judge.

Before the court are the parties' cross motions for summary judgment. Plaintiffs instituted the above-styled discrimination action on November 2, 1994. Defendants filed their Motion for Summary Judgment and a brief in support thereof on March 13, 1995. On May 23, 1995, Plaintiffs filed a response in opposition to Defendants' motion, and, concomitantly, a Motion for Summary Judgment. The court has carefully and attentively reviewed the pleadings, arguments and evidence submitted to it, and concludes that an even-handed view of the law tilts in favor of granting Defendants' motion for summary judgment.

## JURISDICTION & VENUE

Jurisdiction is proper pursuant to 28 U.S.C. § 1331 as Plaintiffs allege violations of the Equal Protection Clause of and the Fourteenth Amendment to the United States Constitution.[1] Moreover, the court exercises supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as Plaintiff claims violations of Alabama statutory law. Personal jurisdiction and venue are not contested.

## BACKGROUND

On August 4, 1994, the Chilton County Board of Education (the "Board") announced that the principal position at Jemison High School was vacant. Subsequently, Plaintiffs Mildred Ellison ("Ellison") and Margaret Beal ("Beal") applied for the vacated position. However, neither Plaintiff received the position.

Defendant Evelyn Gibson ("Gibson"), while a member of the Chilton County Board of Education, applied for the Jemison High School principal position. Defendant Donald Hand ("Hand"), then the Superintendent of the Board, interviewed Gibson for the principalship of Jemison High. On August 17, 1994, the Board appointed Gibson to said position.

In July 1994, the Board announced as vacant the Vocational Center Director position. Plaintiff Randall Hayes ("Hayes") applied and received an interview for said position. In August of 1994, Defendant Hand recommended and the Board voted to appoint David Conway ("Conway") to the Vocational Center Director position. Plaintiff asserts, and Defendants deny that Plaintiff Hayes' total years, qualifications and experience, as these factors are considered for the Vocational Center Director position, are equal or superior to those of Conway.

On August 1994, Defendant Gibson allegedly resigned her position on the Board. Plaintiffs instituted the above-styled cause on November 2, 1994, alleging federal constitutional and statutory violations. First, Plaintiffs claim that the appointment of Gibson to the principal position of Jemison High violated the Equal Protection clause of the Constitution. Plaintiffs contend that Defendant Gibson received preferential treatment in attaining the principal position at Jemison High. Plaintiffs allege that Gibson's appointment to the position was due in a not insubstantial degree to her status as a fellow board member. Plaintiffs assert that Defen-

---

1. Section 1331 provides, "[t]he federal district courts shall have original jurisdiction of all civil actions arising under the ... laws ... of the United States."

dants' discriminatory motive is evidenced by Defendants' refusal to apply the non-racial objective criteria as mandated by *Lee v. Macon County et al.,* 267 F.Supp. 458 (M.D.Ala. 1967), when satisfying the employment needs for the principal and vocational center director positions.[2] Essentially, Plaintiffs aver that Defendants applied an arbitrary and capricious standard, not rationally grounded in legitimate criteria, in filling these positions.

Next, Plaintiffs claim that the Board's determination and means of filling the Jemison High principal and vocational center director positions defy the court's order wherein the court approved non-racial objective criteria to be used by the Board in the appointment of the principal in the Chilton County school system. Finally, Plaintiffs claim that Defendants' conduct violated the *Alabama Code (1975),* § 16–9–23, which provides:

> The county superintendent of education shall nominate in writing for appointment by the county board of education all principals, teachers and all other regular employees of the board. He shall assign them to their positions, transfer them as the needs of the schools require, recommend them for promotion, suspend them for cause and recommend them for dismissal ...

According to the Plaintiffs, Defendant Hand did not recommend that Defendant Gibson be appointed principal of Jemison High. This allegation is demonstrated by Defendant Hand's submission of the names of four prospects for the then vacated principal position. Plaintiff prayed that the court: 1) declare that the Defendants' conduct violated the Equal Protection Clause of Amendment XIV to the United States Constitution and 42 U.S.C. § 1983; 2) declare that the Defendants are in violation of the court's order in *Lee v. Chilton County,* Civil Action No. 3100–N; 3) declare the respective employment practices of the Defendants unconstitutional; 4) vacate the Jemison High principal and Vocational Center director positions; and 5) issue declaratory relief enjoining Defendants and their successors in office from violating the rights of Plaintiffs and retaliating against them for bringing the above-styled action.

On March 13, 1995, Defendants, the Chilton County Board of Education, Hand, Ray Scruggs, Mike Gothard, Hank Grooms, O.J. McGriff, Ann Glasscock, Allen Childress, Eddie Reed, Neal Bice, Robert Hall, Evelyn Gibson, James Hill, Harry Fox, Sue Smith and Allen Williams moved for summary judgment on each of Plaintiff's claims.[3] Defendants claim that section 42 U.S.C. § 1981 applies solely to racial discrimination and Plaintiffs, each of whom is white, do not contend that race was a motivating factor in the employment actions at issue.

Defendants also claim that Plaintiffs' equal protection claim is not cognizable in the instant matter because the race neutral criteria set forth in *Lee v. Chilton County,* Civil Action No. 3100 (March 1, 1971) are not applicable. Defendants also argue that, given the circumstances, African–Americans would have received similar treatment. Moreover, Defendants aver that Plaintiffs'

---

**2.** In *Lee v. Macon County Board of Education, et al.,* 267 F.Supp. 458, the court ordered numerous Alabama school districts, including Chilton County, to develop a plan of desegregation for all grades commencing with the 1967–68 school term. 267 F.Supp. at 482–83. On April 3, 1970, the United States District Court for the Middle of Alabama approved a plan of desegregation for the Chilton County school system. *Lee v. Macon County Board of Education,* 267 F.Supp. 458.

Precipitated by the approval of the desegregation plan articulated in Civil Action 604–E, on March 1, 1971, this court approved a set of nonracial objective criteria to be employed by the Chilton Board of Education when hiring educators. *Lee v. Chilton County, infra.* The nonuse of these criteria prompts the instant action.

**3.** Recently, Defendants Scruggs, Gothard, Grooms, McGriff, Glasscock, Childress and Reed replaced former board members Bice, Hall, Hill, Fox, Smith and Williams. By operation of law, the new members were substituted for the former board members in the former board members' official capacity. As Rule 25 of the *Federal Rules of Civil Procedure* provides:

> When a public officer is a party to an action in his official capacity and during its pendency ... ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party.

Fed.R.Civ.P. 25(d)(1). Rule 25(d)(1) only pertains to officials in their official capacity; therefore, all former board members remain amenable to suit in their individual capacity.

state law cause of action must fail as Plaintiffs do not state a claim upon which relief may be granted. Defendants aver that the relevant Alabama statutory provision does not prohibit the superintendent from recommending more than one candidate for a vacant position and Gibson did not serve as an employee of the Chilton County Board of Education and a member of the board, simultaneously.

On May 23, 1995, Plaintiffs filed a response in opposition to Defendants' motion for summary judgment and a cross motion for summary judgment. Plaintiffs contend that the Defendants do not dispute that they did not apply the *Lee v. Chilton County* criteria when filling the positions at issue. Plaintiffs allege that these criteria would have been used if African–Americans had applied for the positions; therefore, Plaintiffs contend that they are entitled to judgment as a matter of law on their federal law claims. Moreover, the Plaintiffs claim that Hand failed to follow Alabama statutory law in hiring Gibson as principal of Jemison High. Consequently, Plaintiff argue that they are entitled to summary judgment on their state law cause of action.

## SUMMARY JUDGMENT MOTION STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a

situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,' " that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 321–25, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475

U.S. at 587, 106 S.Ct. at 1356. *See also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

## DISCUSSION

### I. Defendants' Motion for Summary Judgment

#### A. Section 1981

■ Section 1981 prohibits race discrimination in making and enforcing contracts.[4] In *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court held that the right to "make" a contract encompassed only contract formation (i.e., hiring and, in certain instances, promotions) and that the right to "enforce" contracts ensured merely equal access to legal process in contractual matters. *Patterson,* 491 U.S. at 179–80, 109 S.Ct. at 2374. The 1991 Amendments to the Civil Rights of 1964 (the "Act"), restored the pre-*Patterson* breadth of section 1981. The phrase "make and enforce" now encompasses and prohibits all forms of racial discrimination in: "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981, *see also Allen v. City of Chicago,* 828 F.Supp. 543, 560 (N.D.Ill.1993); *Mass v. Martin Marietta Corp.,* 805 F.Supp. 1530, 1534 (D.Colo.1992). Thus, § 1981 protects all persons, Caucasian and non-Caucasian alike, from racially motivated abridgements of the right to contract equally. *See Robertson v. Maryland State Department of Personnel,* 481 F.Supp. 108 (D.Md.1978). Plaintiff neither alleges nor is the court aware of any direct evidence of discrimination in the instant action. However, in *Howard v. BP Oil Co., Inc.,* 32 F.3d 520 (11th Cir.1994), the court held that *McDonnell Douglas's* burden-shifting analysis applies to actions brought under § 1981, which means that, even in the absence of direct discrimination, a plaintiff may withstand summary judgment if he or she constructs a prima facie case of racial discrimination.[5] Once the plaintiff makes such a showing, a presumption of discrimination arises and the burden of production shifts to the defendant-employer to articulate a legitimate nondiscriminatory reason for the adverse employment decision.

■ The *McDonnell Douglas* test requires a reverse discrimination plaintiff to demonstrate: 1) that he or she belongs to a class; 2) that she was qualified for a job; 3) that she was denied a job/position; and 4) that said position was filled by a minority. *See Wilson v. Bailey,* 934 F.2d 301, 304 (11th Cir.1991). The court acknowledges that Plaintiffs all belong to a class—Caucasian. Also, based on the information before it, the court finds that all Plaintiffs were qualified for the respective position for which each applied. However, neither of the Plaintiffs can claim that the sought after position was filled by a minority; therefore, Plaintiffs fail to satisfy *Wilson's* fourth element.

■ Furthermore, plaintiffs do not appear to allege that the Board actually discriminated against them in making the determination to employ Gibson as Jemison's principal and Conway as the Director of the Vocational Center. The Plaintiffs simply allege that if they were competing against African–Americans, a different standard of evaluation would have been used. The court views this discriminatory connection as too attenuated and removed from the discrimination contemplated by section 1981.

Here, Plaintiffs were not competing with African–Americans. The Board made a determination, without evaluating candidates, by the criteria enunciated in *Lee v. Chilton County.* The Board did not use a racially based, preferential set of criteria for evaluating Gibson and Conway and a totally different, perhaps discriminatory, set of guidelines in determining whether Plaintiffs should pro-

---

**4.** 42 U.S.C. § 1981 provides in part: "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens."

**5.** In the landmark employment case of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established a framework for the allocation of the burden of production and an order for the presentation of proof in cases concerning discriminatory treatment in employment.

cure the respective positions. Had African–Americans applied for the positions, which Plaintiffs contend were impermissibly and improperly granted, and the Board refused to apply the same standard, Plaintiffs' claims would arguably be more meritorious.

### B. Equal Protection

"Racial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination." *Wygant v. Jackson Board of Education*, 476 U.S. 267, 273, 106 S.Ct. 1842, 1846, 90 L.Ed.2d 260 (1986) (quoting *Regents of University of California v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978)); *Bennett v. Arrington*, 20 F.3d 1525, 1544 (11th Cir.1994) (citation omitted). In the landmark case of *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493, 518–21, 109 S.Ct. 706, 722, 735–36, 102 L.Ed.2d 854 (1989), the United States Supreme Court established that strict scrutiny is the appropriate standard to be applied to claims of race-based discrimination by state government entities, irrespective of the complaining party's race.

In the instant action Plaintiffs complain that when African–Americans are among the pool of applicants for a specific position, the Board applies the race neutral criteria set forth in the *Lee v. Chilton County* decree of March 1, 1971. Plaintiffs further claim that the Board does not employ a similar method of selection when all the applicants are Caucasian. Plaintiffs argue that an application of the decree in the context of African–American employees and not Caucasian employees is an act of reverse discrimination and in violation of the Equal Protection Clause of the United States Constitution. Essentially, Plaintiffs contend that the Defendant Board is constitutionally required to apply the criteria set forth in *Lee v. Chilton County* to all prospective employees, regardless of their race and the circumstantial disposition. The Plaintiffs allege that the unevenhanded application of this criteria coupled with the allegedly irrational and arbitrary scheme employed by Defendants is opprobrious and in direct contravention of the United States Constitution.

Defendants contend that the non-racial objective criteria set forth in *Lee v. Chilton County*, Civil Action No. 3100–N were prompted by the former United States Fifth Circuit Court of Appeals' holding in *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211 (5th Cir.1969). Consequently, Defendants aver that the criteria set forth in *Lee v. Chilton County* apply only when implementing desegregation plans; therefore, the criteria set forth therein for filling teacher and staff positions are not applicable in the instant case. Plaintiffs do not attempt to rebut Defendants' assertion that the race neutral guidelines articulated in *Lee v. Chilton County* is not interrelated to *Singleton*. Moreover, the court finds that the foregoing decrees were transcribed to rid the respective school systems of facial de jure segregation.

In *Lee v. Chilton County* the court approved a set of race neutral criteria for hiring principals and educators who were displaced as a result of the desegregation movement in the late 1960's and early 1970's. Pursuant to said criteria, the Chilton County school system is obliged to apply the following non-racial objective criteria in employing, dismissing, transferring and demoting principals within its system when implementing strategies to attain a unitary school system:

  A.  Degree or degrees held.

  B.  Number of years of experience:

    1.  as a principal in the [Chilton County school] system;

    2.  as a principal in any system; and

    3.  in education other than as a principal.

Prior to the United States Fifth Circuit Court of Appeals' decision in *Singleton*, many boards of education in the South operated dual school systems—one for Caucasians and another for African–Americans. These systems entrenched segregation and perpetuated separation of the races. Riding the coattail of the United States Supreme Court's holding in *Alexander v. Holmes County Board of Education*, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969), the *Singleton* court, mandated as follows regarding the desegregation of faculty and other staff under desegregation orders:

"The School Board shall announce and implement the following policies:

1.  Effective not later than February 1, 1970, the principals, teachers, teacheraides and other staff who work directly with children at a school shall be so assigned that in no case will the racial composition indicate that a school is intended for Negro or white students ...

2.  Staff members who work directly with children, and professional staff who work on the administrative level will be hired, assigned, promoted, paid, demoted, dismissed, and other wise treated without regard to race, color, or national origin.

3.  If there is to be a reduction in the number of principals, teachers, teacheraides, or other professional staff employed by the school district which will result in a dismissal or demotion of any such staff members, the staff member to be dismissed or demoted must be selected on the basis of objective and reasonable non-discriminatory standards from among all the staff of the school district. In addition, if there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race, color, or national origin different from that of the individual dismissed or demoted, until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so ..."

*Singleton,* 419 F.2d at 1217–18.[6]

Courts have determined that the commands set forth in *Singleton* do not apply in cases that do not involve displacement, hiring, and rights of first refusal pursuant to desegregation plans or goals.[7] In *Lee v. Macon County Board of Education, et al. (Muscle Shoals),* 453 F.2d 1104 (5th Cir. 1971), the court stated:

> "[i]t is clear that under the *Singleton* approach to the Fourteenth Amendment, if a principal is demoted or dismissed pursuant to a desegregation order and if his objective qualifications for his principalship do not diminish in an absolute sense after the issuance of the order and his demotion or dismissal, then he must be given opportunity to assume any new principalships or any positions tantamount to his lost principalship prior to the offering of the position to new applicants of another race" (emphasis added).

*Id.* at 1111.[8]

In *Hardy v. Porter,* 546 F.2d 1165 (5th Cir.1977), plaintiff Joseph Hardy was employed by the Clarksdale (Mississippi) Municipal Separate School District as principal of an all-black high school. The district's schools underwent a court-ordered desegregation plan in 1971, and Hardy was offered and accepted a position as assistant principal at a newly integrated high school. At the close of the 1970–71 school year, Hardy resigned from the Clarksdale school system and began postgraduate studies at Auburn

**6.** Following the court's ruling in *Singleton,* many of Alabama's school boards and districts fell under attack for operating dual school systems and, and as a result, were subjected to heavy judicial scrutiny. The seminal case in Alabama was *Lee v. Macon County Board of Education, et al.,* 453 F.2d 1104 (5th Cir.1971). The subsequent actions retained Lee as the named plaintiff and the defendants were usually the defendant school boards.

**7.** As stated in *Lee v. Pickens County School System,* 563 F.2d 143, 145, (5th Cir.1977), *Singleton* provides twofold protection to persons demoted or dismissed because of desegregation related reductions:

> "First, procedural fairness in determining who is to be demoted is guaranteed by the requirement of prior written criteria. *United States v. Gadsden County School District,* 539 F.2d 1369 (5th Cir.1976); *see also Lee v. Selma City*

School System, 552 F.2d 1084 (5th Cir.1977). Second, those who are displaced are given priority consideration for new positions equal to one which was lost because of desegregation." (citation omitted).

**8.** In *Lee v. Macon County Board of Education, et al., (Muscle Shoals School System),* 453 F.2d 1104 (5th Cir.1971), the court held that where desegregation order was entered and, as a result thereof, a black principal of an all-black school lost his job when the school was ordered closed, any future principalship vacancies in the four constituent district schools must be filled from the ranks of the predesegregation order of population and the school board could not go outside the population to appoint future principals of another race, color or national origin, even if it stayed within its own school system, until that population was exhausted, until members of the population opted out or unless a member of the population was unqualified to serve.

University. In February 1972, Hardy became aware that the principal position at Clarksdale would be open for the 1972–73 school year. Hardy applied for the position; however, the principalship was filled by a Caucasian. In the spring of 1974, Hardy learned that the principal of Clarksdale High was resigning. He applied for the principalship, but, once again the position was filled by the Caucasian assistant principal. Subsequently, Hardy instituted an action against the officials of the school district claiming that the school system had denied him his *Singleton* rights by not applying "objective and reasonable nondiscriminatory standards" in filling said principalship. Furthermore, Hardy alleged that he was the victim of actionable race discrimination. In finding that Hardy's resignation was not attributable to "school desegregation," the *Hardy* court held that Hardy possessed no *Singleton* protection. *Hardy*, 546 F.2d at 1168.[9]

In *Ayers v. Western Line Consolidated School District*, 555 F.2d 1309 (5th Cir.1977), the court expressed, "[a] plaintiff seeking *Singleton* protection has the burden of proving the applicability of its terms." *Id.* at 1321, *see also Lee v. Pickens County School System*, 563 F.2d 143, 145 (5th Cir.1977). The *Ayers* court ultimately held that if the reduction in the (guidance counselor) positions at issue were not related to desegregation, *Singleton* would not apply.[10]

In the instant action, the vacating and subsequent filling of the Jemison High principalship bear, unequivocally, no relation to a plan of desegregation/integration. In fact, Plaintiffs do not even claim that the vacation of the Jemison High principal position was remotely affiliated with an integration policy.

Therefore, the court finds that no *Singleton* protection applies in this action. Moreover, an identical result would be reached in the instant case if Plaintiffs were African–American. Consequently, the court finds that there can be no Equal Protection violation because, by definition, in order for such a violation to exist, the county must maintain a system of benefits and entitlements where one race gains preferential access to said benefits. Here, that is simply not the case.

Mr. Hand asserts that when he assumed the superintendent position in July 1991, the *Lee v. Chilton County* formula was used to select educators. (Hand depo. p. 12). Hand claims that the Board discontinued the use of the non-racial objective criterion upon the advice of counsel. (Hand depo. pp. 12–13). Plaintiffs point to Defendant Hand's deposition testimony in which Hand stated that when African–Americans applied for positions, the non-racial criterion was used.[11] (Hand depo. p. 26). However, Plaintiffs give only part of Hand's testimony. Hand also stated that, as he understood it, the point system or objective nonracial criteria was not to be used in this situation because "there has [sic] been no blacks that's been misplaced [displaced] in our system. For instance, they didn't have a job taken away and put back into a job." (Hand depo., p. 26).

The court finds that the regimen set forth in *Lee v. Chilton County* encourages fairness and qualitative justifications in any appropriate application process. It removes subjectivity and predispositions to not consider qualified persons for improper motives and prejudices, be they race-based or otherwise. Therefore, its continued voluntary use by the

---

9. The court deems it noteworthy that the Hardy court probably would have found otherwise had Hardy brought an action following his first displacement. The court found that Hardy's resignation was the product of volition and choice, not mandatory displacement prompted by desegregation efforts. *Hardy*, 546 F.2d at 1168.

10. In *Ayers*, the court remanded the action to the district court for further findings in order to determine whether the reduction in guidance counselor positions was a product of desegregation efforts. *Ayers*, 555 F.2d at 1321.

11. Plaintiffs introduce the affidavit of Solomon Seay, Esq. to substantiate their claim that the nonracial objective approach articulated in *Lee v. Chilton County* is intended to have perpetual duration. The court realizes that Mr. Seay was an attorney of record in *Lee v. Chilton County*. Moreover, the court notes that Mr. Seay has contributed much to the civil rights realm and notes that his opinions are held in high esteem by the court. However, Mr. Seay's affidavit cannot override the intended purpose and ostensible focus of *Singleton* and its progeny.

Board surely can not be criticized.[12] However, the Plaintiffs' attempt to apply the dictates of *Singleton* and its progeny in a context not contemplated when they were decreed is untenable. An application of those principles here would distort the meaning and significance of their purpose.[13]

## C. State Law Actions

■ Pursuant to section 16–9–23 of the *Alabama Code* (1975):

The County Superintendent of Education shall nominate in writing for appointment for the County Board of Education all principals, teachers and all other regular employees of the Board. he shall assign them to their regular positions, transfer as the needs of the schools require, recommend them for promotion, suspend them for cause and recommend them for dismissal ...

Following the recommendation(s) of the superintendent, the next step by the Board consummates the selection.[14] *See Alabama Code (1975)*, § 16–8–23. According to Plaintiffs' interpretation of these statutory provisions, Hand, as the superintendent of the Chilton County school system, was obligated to submit to the Board, for its approval, no more than a single name for recommendation to the Board to fill the vacant Jemison High principal position.[15]

Plaintiffs correctly point out that the Alabama Supreme Court has not determined the issue of whether a County Board of Education may select from a list of names presented to it by the County Superintendent (Pls.' Mot. for Summ.Jud. p. 15). Plaintiffs cite *Smith v. Alabama State Tenure Comm'n*, 454 So.2d 1000 (Ala.Civ.App.1984), as an inferential justification for their proposition. In *Smith*, the court stated, "[w]e think that the language of the Section [plainly] makes all 'teachers subject to the direction of the Board of Education, following the recommendation of the County Superintendent, as to the position in which they shall serve during any succeeding year.'" *Smith*, 454 So.2d at 1001 (citing *Clark v. Beverly*, 257 Ala. 484, 59 So.2d 810, 816 (1952)).

Neither party adduces any precedent that, on its face, is dispositive of this state law issue. Because the court believes that the operation of the schools should abide within the properly exercised discretionary authority of the States, as delegated to the respective school boards and districts, it would not be appropriate for the court to draw a legal conclusion on this issue. The State of Alabama, not the United States district courts, should determine the manner in which its principals and educational support personnel should be selected, so long as its process and

**12.** If the Board considers the Chilton County system to be unitary, the court suggests that it consider petitioning the court to be so declared and thereby remove itself from the continuing jurisdiction of the court. *See e.g., Board of Education of Oklahoma City v. Dowell*, 498 U.S. 237, 111 S.Ct. 630, 112 L.Ed.2d 715 (1991) (on remand, the district court instructed to determine whether the Board had complied in good faith with the previously instituted desegregation decree since it was entered, and whether the vestiges of past discrimination had been eliminated to the extent practical).

**13.** The court is not suggesting that plaintiffs, who experience discrimination but are not displaced because of school rearranging prompted by desegregation efforts, are without legal recourse. Numerous federal regimens are intact to discourage and eradicate discrimination in employment, most notably 42 U.S.C. § 2000e *et seq.*, Title VII. The court is simply finding that because the employment decisions at issue are not related to any plan of desegregation which caused a reduction in force and Plaintiffs were never displaced

by a "staff reduction[] [or] rearrangement caused by integration," *Singleton/Lee v. Chilton County*, does not apply.

**14.** Section 16–8–23 provides in part that the "County Board of Education shall appoint, upon the written recommendation of the County Superintendent, all principals, teachers, clerical and professional assistants authorized by the Board."

**15.** Plaintiffs lamentingly stated the following in their response to Defendants' motion for summary judgment/cross motion for summary judgment:

"It is the position of defendant Hand that he complied with Section 16–9–23 when he 'presented a list of four applicants stating that he would let the Board pick the one they want.' The position of the defendant school board is contrary to the established Alabama law.

It is apparent that four persons could not be employed in the position of principal of Jemison High School."

system does not violate the United States Constitution.

## II. Plaintiffs' Motion for Summary Judgment

The disposition of Defendants' motion for summary judgment compels the conclusion that Plaintiffs' motion for summary is due to be denied. As previously stated, Plaintiffs' state law cause of action is due to be dismissed without prejudice; therefore, should Plaintiffs decide to do so, they may petition the appropriate state court for relief.[16]

## CONCLUSION

Because the court finds that the Chilton County Board of Education did not violate Plaintiffs' rights to equal protection under the United States Constitution or 42 U.S.C. § 1981, the court finds that Defendants' motion for summary judgment is due to be granted on those causes of action. However, Plaintiffs' state law cause of action presents, what appears to be a matter of first impression; therefore, the court finds that this claim is due to be dismissed *without prejudice*. In light of the foregoing determination, the court finds that Plaintiffs' motion for summary judgment is due to be denied. This issue would be more appropriately resolved by the Alabama courts.

A judgment in accordance with this memorandum opinion shall be entered separately.

---

**16.** This opinion focused primarily on the principalship at Jemison High. This approach was taken for the sake of clarity. Therefore, the points developed and the conclusions drawn apply to the Vocational Center directorship, as well.